UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN LECITHIN COMPANY,
LIPOID GmbH,
LIPOID, LLC, and
PHOSPHOLIPID GmbH,

      Plaintiffs,

-v-

CARSTEN MATTHIAS REBMANN,

      Defendant, Counterclaimant and
      Third-Party Plaintiff,

-v-

HERBERT REBMANN, LIPOID GRUNDSTUECKS
GMBH, LIPOID VERWALTUNGS, GMBH, LIPOID
AG, and COMPLECTOR AG

      Third-Party Defendants.

Case No. 12-cv-00929-VSB-KNF
**Document Electronically Filed**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ____5/18/2015____
```

## STIPULATION

**WHEREAS,** in its Memorandum and Order entered on December 12, 2014 (Dkt. 141), the Court dismissed certain counterclaims asserted by Defendant Carsten Matthias Rebmann ("Matthias") in his Amended Answer, Counterclaims and Third-Party Claims without prejudice and indicated that it would afford Defendant an opportunity to amend; and

**WHEREAS,** in a separate Memorandum and Order (Dkt. 140), the Court ruled that personal jurisdiction over Third-Party Defendant Herbert Rebmann ("Herbert" or "Dr. Rebmann") is deemed established; and

**WHEREAS,** Herbert's deposition was held on April 29, 2015, in Frankfurt, Germany pursuant to the Court's Order entered on March 27, 2015 (Dkt. 155); and

1

**WHEREAS,** pursuant to said Order, Matthias was granted until May 15, 2015 to submit his request for leave to file an amended pleading; and

**WHEREAS,** the parties have agreed to submit this Stipulation and request that it be "So Ordered" by the Court.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED:**

1.  Plaintiffs and Third-Party Defendants hereby consent, pursuant to Federal Rules of Civil Procedure 15(a)(2), to the filing of an amended pleading by Matthias, upon the following conditions.

2.  The foregoing consent shall not constitute a waiver by Plaintiffs, Third-Party Defendants or Matthias of any rights they may otherwise have in this action, including without limitation Plaintiffs and Third-Party Defendants' right to move to dismiss or otherwise respond to the amended pleading, and each party's right to demand additional discovery with respect to, including without limitation, issues relating to the relationships between and among Matthias, Plaintiffs, and Third-Party Defendants.

3.  The foregoing consent shall not constitute an admission that any of the Third-Party Defendants are subject to personal jurisdiction in this case (but recognizing that the Court has already determined that it has personal jurisdiction over Herbert).

4. Plaintiffs and Third-Party Defendants shall have until June 12, 2015 to respond to

Matthias' amended pleading.

Dated: May 15, 2015

WUERSCH & GERING LLP

By: _____
Gregory F. Hauser, Esq.
Attorney for Plaintiffs/Third-Party Defendants
100 Wall Street, 10th Floor
New York, NY 10005
(212) 509-5050

SAMUEL GOLDMAN & ASSOCIATES

By: _____
Samuel Goldman, Esq.
Attorneys for Defendant/Counterclaimant
1185 Avenue of the Americas; 18th Floor
New York, NY 10036
(212) 725-1400

SO ORDERED:

Vernon S. Broderick  5/18/2015
United States District Judge

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERICAN LECITHIN COMPANY, LIPOID GmbH,
LIPOID, LLC, and PHOSPHOLIPID GmbH,

Plaintiffs,

-v-

CARSTEN MATTHIAS REBMANN, individually and on
behalf of LIPOID GRUNDSTUECKS GmbH,

Defendant and Third-Party Plaintiff

-v-

HERBERT REBMANN, LIPOID STIFTUNG,
LIPOID BETEILIGUNGS GmbH, LIPOID
VERWALTUNGS AG, LIPOID GRUNDSTUECKS GmbH
and PHOSPHOLIPID FORSCHUNGSZENTRUM e.V.

Third-Party Defendants.

Case No. 12-cv-0929 (VSB)

**Document Electronically Filed**

---

## SECOND AMENDED ANSWER, COUNTERCLAIMS AND THIRD-PARTY CLAIMS, WITH JURY DEMAND

Defendant, Counterclaimant and Third-Party Plaintiff Carsten Matthias Rebmann ("Matthias"), by and through his attorneys, Samuel Goldman and Associates, hereby submits the following Second Amended Answer, Counterclaims and Third-Party Claims, with Jury Demand, in response to the Amended Complaint of Plaintiffs American Lecithin Company ("ALC"), Lipoid GmbH, Lipoid, LLC, Phospholipid GmbH (together, "Plaintiffs") and to assert third-party claims individually and on behalf of Lipoid Grundstuecks GmbH against Third-Party Defendants Lipoid Beteiligungs GmbH, Lipoid Verwaltungs AG, Lipoid Grundstuecks GmbH and Phospholipid Forschungszentrum e.V. (together, "Third-Party Defendants").

## OVERVIEW

This action seeks a resolution of all business issues and disputes between Herbert Rebmann ("Herbert") and the web of companies controlled by him known as the "Lipoid Group," on the one hand, and Herbert's eldest son Matthias, on the other. These issues include Plaintiffs' claims against Matthias that he improperly retained certain intellectual property, a computer and some software after Herbert terminated his employment as CEO of Lipoid LLC and ALC, as well as Matthias' claims relating to (a) Herbert's wrongful and illegal termination of Matthias' employment and positions with Plaintiffs ALC, Lipoid LLC and the Lipoid Group in general, (b) Herbert's wrongful taking of Matthias' ten (10%) percent ownership interest in the Lipoid Group under false pretenses and his failure to restore the same, (c) Herbert's wrongful taking of funds Matthias inherited from his mother, who was Herbert's first wife, and investment of the same in the Lipoid Group, (d) Herbert's unlawful efforts to interfere with Matthias' business relations and to keep him from competing in the lecithins and phospholipids industries, and (e) Herbert's claims that Matthias owes various sums of money to the Lipoid Group and Matthias' claims that he is owed money by the Lipoid Group, for which a complete accounting is necessary.

A complete resolution of the issues between the parties will require that Herbert and several other members of the Lipoid Group controlled by him, be brought into this proceeding as third-party defendants.

## ANSWER TO THE AMENDED COMPLAINT

### The Parties

1.    Defendant denies knowledge or information sufficient to form a belief regarding the allegations in Paragraph 1.

2.    Defendant denies knowledge or information sufficient to form a belief regarding

the allegations in Paragraph 2.

3.     Defendant denies knowledge or information sufficient to form a belief regarding the allegations in Paragraph 3.

4.     Defendant denies knowledge or information sufficient to form a belief regarding the allegations in Paragraph 4.

5.     Defendant admits the allegations in Paragraph 5.

## Jurisdiction and Venue

6.     Paragraph 6 states a legal conclusion to which no factual response is required.

7.     Defendant admits that he resides within the Southern District of New York. The remainder of Paragraph 7 states a legal conclusion to which no factual response is required.

## Facts

8.     Defendant denies knowledge or information sufficient to form a belief regarding the allegations in Paragraph 8.

9.     Defendant denies knowledge or information sufficient to form a belief regarding the allegations in Paragraph 9.

10.     Defendant admits the allegations in Paragraph 10.

11.     Defendant admits so much of Paragraph 11 as alleges "While an officer of . . . Lipoid, LLC, Defendant registered, under his own name". Defendant denies knowledge or information sufficient to form a belief regarding the remaining allegations in Paragraph 11.

12.     Defendant denies knowledge or information sufficient to form a belief regarding the allegations in Paragraph 12.

13.     Defendant denies the allegations in Paragraph 13.

14.     Defendant admits so much of Paragraph 14 as alleges "Defendant, in addition, has

registered two other domain names, phospholipids.net and cochleates.com". Defendant denies knowledge or information sufficient to form a belief regarding the remaining allegations in Paragraph 14.

15.     Defendant admits so much of Paragraph 15 as alleges "The URL lipoidllc.com redirects to lipoid.com." Defendant denies knowledge or information sufficient to form a belief regarding the remaining allegations in Paragraph 15.

16.     Defendant denies knowledge or information sufficient to form a belief regarding the allegations in Paragraph 16.

17.     Defendant admits that his employment was terminated on or about August 11, 2011 and that he received a letter from Lipoid LLC dated August 25, 2011. The remainder of Paragraph 17 is denied.

18.     Defendant admits that the Domain Names are registered in his name. The remainder of Paragraph 18 is denied.

19.     Defendant denies knowledge or information sufficient to form a belief regarding the allegations in Paragraph 19.

20.     Defendant denies the allegations in Paragraph 20.

21.     Defendant denies the allegations in Paragraph 21.

22.     Defendant denies the allegations in Paragraph 22.

23.     Defendant denies the allegations in Paragraph 23.

24.     Defendant denies the allegations in Paragraph 24.

25.     Defendant denies the allegations in Paragraph 25.

26.     Defendant denies the allegations in Paragraph 26.

27.     Defendant denies the allegations in Paragraph 27.

28.     Defendant denies the allegations in Paragraph 28.

29.     Defendant denies knowledge or information sufficient to form a belief regarding the allegations in Paragraph 29.

30.     Defendant denies knowledge or information sufficient to form a belief regarding the allegations in the first sentence of Paragraph 30. The remainder of Paragraph 30 is denied.

31.     Defendant admits so much of Paragraph 31 as alleges "Defendant has engaged the IT company W-Systems." The remainder of Paragraph 31 is denied.

32.     Defendant denies the allegations in Paragraph 32.

33.     Defendant denies the allegations in Paragraph 33.

34.     Defendant denies the allegations in Paragraph 34.

## FIRST CLAIM FOR RELIEF
### (Cybersquatting, 15 U.S.C§ 1125(d))

35.     Defendant realleges and incorporates his responses to Paragraphs 1-34 as if fully set forth herein.

36.     Defendant denies the allegations in Paragraph 30.

37.     Defendant denies the allegations in Paragraph 31.

38.     Defendant denies the allegations in Paragraph 32.

## SECOND CLAIM FOR RELIEF
### (Breach of Fiduciary Duty as to Domain Names)

39.     Defendant realleges and incorporates his responses to Paragraphs 1-38 as if fully set forth herein.

40.     Defendant denies the allegations in Paragraph 40.

41.     Defendant denies the allegations in Paragraph 41.

42. Defendant denies the allegations in Paragraph 42.

43. Defendant denies the allegations in Paragraph 43.

44. Defendant denies the allegations in Paragraph 44.

## THIRD CLAIM FOR RELIEF
(Conversion as to Domain Names)

45. Defendant realleges and incorporates his responses to Paragraphs 1-44 as if fully set forth herein.

46. Defendant denies knowledge or information sufficient to form a belief regarding the allegations in Paragraph 46.

47. Defendant denies the allegations in Paragraph 47.

48. Defendant denies the allegations in Paragraph 48.

49. Defendant denies the allegations in Paragraph 49.

50. Defendant denies the allegations in Paragraph 50.

51. Defendant denies the allegations in Paragraph 51.

## FOURTH CLAIM FOR RELIEF

(Breach of Fiduciary Duty as to Plaintiffs' CRM Software and Laptop Computer)

52. Defendant realleges and incorporates his responses to Paragraphs 1-51 as if fully set forth herein.

53. Defendant denies the allegations in Paragraph 53.

54. Defendant denies the allegations in Paragraph 54.

55. Defendant denies the allegations in Paragraph 55.

56. Defendant denies the allegations in Paragraph 56.

57. Defendant denies the allegations in Paragraph 57.

## FIFTH CLAIM FOR RELIEF

(Conversion as to as to Plaintiffs' CRM Software and Laptop Computer)

58.     Defendant realleges and incorporates his responses to Paragraphs 1-57 as if fully set forth herein.

59.     Defendant denies the allegations in Paragraph 59.

60.     Defendant denies the allegations in Paragraph 60.

61.     Defendant denies the allegations in Paragraph 61

62.     Defendant denies the allegations in Paragraph 62.

63.     Defendant denies the allegations in Paragraph 63.

64.     Defendant denies the allegations in Paragraph 64.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

65.     The complaint fails to state a claim upon which relief can be granted.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

66.     The relief Plaintiffs seek is barred by the doctrine of unclean hands.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

67.     The relief Plaintiffs seek is barred by the doctrine of laches.

### COUNTERCLAIMS AND THIRD-PARTY CLAIMS

### I.      JURISDICTION AND VENUE

68.     Jurisdiction is proper under 28 U.S.C. § 1332 in that complete diversity of citizenship exists between defendant, on the one hand, and the plaintiffs and third-party defendants, on the other.

69.     The Court has supplemental jurisdiction over the counterclaims and third-party claims pursuant to 28 U.S.C. § 1367.

70.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and (c).

## II.    PARTIES

71.     Defendant and Counterclaim and Third-party Claimant Carsten Matthias Rebmann is a resident of the City and State of New York and has been since 2003.

72.     Plaintiff ALC is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Connecticut. ALC has subjected itself to the jurisdiction of this Court by commencing this lawsuit.

73.     Plaintiff Lipoid LLC is a limited liability company organized and existing under the laws of the State of New Jersey, with its principal place of business in New Jersey. Lipoid LLC has subjected itself to the jurisdiction of this Court by commencing this lawsuit.

74.     Plaintiff Lipoid GmbH is a limited liability company organized and existing under the laws of the Federal Republic of Germany, with its principal place of business in Ludwigshafen, Germany. Lipoid GmbH has subjected itself to the jurisdiction of this Court by commencing this lawsuit.

75.     Plaintiff Phospholipid GmbH is a limited liability company organized and existing under the laws of the Federal Republic of Germany, with its principal place of business in Cologne, Germany. Phospholipid GmbH has subjected itself to the jurisdiction of this Court by commencing this lawsuit.

76.     Third-party Defendant Herbert Rebmann ("Herbert") is a citizen of Federal Republic of Germany, with his principal residence at Furstenweg 13, 67435 Neustadt, Germany. By Memorandum and Order entered December 12, 2014 (Dkt. 140), this Court has determined that Herbert is subject to the jurisdiction of this Court.

77. Upon information and belief, Third-Party Defendant Lipoid Beteiligungs GmbH is limited liability company organized under the laws of the Federal Republic of Germany with its principal office located at Herbert's residence, Furstenweg 13, 67435 Neustadt, Germany. Since the commencement of this action, Herbert transferred all or almost all of his ownership interest in the various business entities comprising the Lipoid Group to Lipoid Beteiligungs. Lipoid Beteiligungs is subject to the jurisdiction of this Court as successor to Herbert's interest in the Lipoid Group generally and with respect to certain assets being claimed by Matthias in this litigation, in particular.

78. Upon information and belief, Third-Party Defendant Lipoid Stiftung is a foundation organized under the laws of the Federal Republic of Germany with its principal office located at Herbert's residence at Furstenweg 13, 67435 Neustadt, Germany. Since the commencement of this action, Herbert transferred most of his ownership interest in Lipoid Beteiligungs to Lipoid Stiftung. Lipoid Stiftung is subject to the jurisdiction of this Court as the successor in interest to Herbert's interest in the Lipoid Group generally and with respect to certain assets being claimed by Matthias in this litigation, in particular.

79. Upon information and belief, Third-party Defendant Lipoid Verwaltungs AG f/k/a Complector AG is a Swiss holding corporation, which owns 100% of the equity in Lipoid LLC and ALC and was in turn 95% owned by Herbert, who transferred such ownership interest to Lipoid Beteiligungs. Lipoid Verwaltungs AG is subject to the jurisdiction of this Court because (a) Lipoid LLC and ALC are *alter egos* and "mere departments" of Lipoid Verwaltungs AG and (b) Herbert is an alter ego of Lipoid Verwaltungs AG.

80. Upon information and belief, Third-party Defendant Lipoid Grundstuecks GmbH is a German limited liability company, which is the successor in interest to Lipoid KG, and which

was indirectly owned almost 100% by Herbert and Lipoid Verwaltungs AG. Lipoid Grundstuecks is subject to the jurisdiction of this Court because it is a "mere department" of Herbert and Lipoid Verwaltungs AG and because it is a successor in interest to Herbert's interest in the Lipoid Group generally and with respect to certain assets being claimed by Matthias in this litigation, in particular.

81.     Upon information and belief, Third-party Defendant Phospholipid Forschungszentrum e.V. a/k/a the Phospholipid Research Center is a German non-profit corporation, which is completely dominated and controlled by Herbert and was used by him to perpetrate wrongs against Matthias complained of in this action. The Phospholipid Research Center has sponsored and conducted research in New York and it is an alter ego company of Herbert and as such is subject to the jurisdiction of this Court.

## III.     HISTORY OF THE LIPOID GROUP

82.     Upon information and belief, Herbert established his own lecithin and phospholipid business in or about 1978. In that year, he organized Lipoid KG to engage in the manufacture, sale and distribution of lecithin and phospholipid products. Lipoid KG owned and operated a factory in Ludwigshafen, Germany, which also served as its headquarters. The initial shareholders of Lipoid KG were Herbert with 70%, his sister, Rosabert with 20% and his student, Birgit Wortberg with 10%. Matthias worked for the company and his father from a very early age, performing a variety of tasks delegated to him by Herbert.

83.     In or about 1985, Herbert divorced Matthias' mother and at some point thereafter married Birgit Wortberg.

84.     Herbert had two sons with his first wife, Matthias and Dominik and two with his second wife, Helge and Balder.

10

85.     Upon information and belief, in or about 1989, the share ownership in Lipoid KG was reorganized so that Herbert had 40%, Ms. Wortberg 30%, Rosbert 10%, Matthias 10%, and Helge and Balder 5% each.  Upon information and belief, Dominik, at some point in time, also had an interest in Lipoid KG, but this was taken from him by Herbert when Dominik elected to live with his mother after her divorce from Herbert.

86.     Lipoid KG's business expanded and the company was soon selling and distributing lecithin and phospholipid products on a worldwide basis.  Upon information and belief, until 1996, the entire lecithin and phospholipids business that Herbert was engaged in was conducted through Lipoid KG.

87.     Upon information and belief, in or about 1996, Herbert "restructured" the Lipoid KG business so as to take away Matthias' 10% ownership interest in it.  Lipoid KG's assets were effectively divided into three parts: (a) Lipoid GmbH, a newly created German company, succeeded Lipoid KG as the manufacturer of the Lipoid products at the Ludwigshafen plant and as seller of Lipoid products in Germany; (b) Lipoid AG, a newly formed Swiss company, succeeded Lipid KG as the seller of Lipoid goods on a worldwide basis except in Germany; and (c) Lipoid KG was renamed Lipoid Grundstuecks GmbH and continued to own the land in Ludwigshafen.  Lipoid Grundstuecks entered into a long term lease with Lipoid GmbH for the Ludwigshafen land. Different ownership structures were established for Lipoid GmbH, Lipoid AG and Lipoid Grundstuecks GmbH, but all of them continued to be controlled and dominated by Herbert.

88.     Matthias did not receive his 10% interest in any of companies that succeeded to the Lipoid KG business – not Lipoid GmbH, not Lipoid AG and not Lipoid Verwaltungs.  The only

11

one of the successor entities that Matthias received his 10% interest in was Lipoid Grundstuecks GmbH, which owned the land in Ludwigshafen that was now net leased to Lipoid GmbH.

89.     Herbert told Matthias that the purpose of this reorganization was to promote operating efficiencies and address liability issues, and not to take away his interest in the Lipoid business. Matthias learned many years later during Herbert's deposition on April 29, 2015, that this wasn't true and that Herbert's intent all along was to take Matthias' shares in the business and that he had done so after concluding that Matthias was an "extreme socialist."

90.     At his deposition, Herbert also explained that Lipoid Grundstuecks GmbH never had any value and that in fact, it had a substantial negative net worth due to environmental contamination of the Ludwigshafen property.

91.     Upon information and belief, Herbert acquired and/or set up other companies that became part of the Lipoid lecithins and phospholipids business that had been carried on by Lipoid KG, in which Matthias had been a 10% owner.  Matthias received no interest in any of these.

92.     The Lipoid Group consists of multiple corporations organized under parallel Swiss and German parent companies. The corporate structure of the Group is highly complex and intentionally so. It is ever evolving in a constant effort to minimize the Group's taxes on a worldwide basis. But, the entire Group functioned as a single business enterprise controlled and dominated absolutely by Herbert.

93.     At the time Matthias was employed by the Lipoid Group, Herbert owned the controlling equity in both the Swiss and German groups.  Upon information and belief, Herbert has, more recently, taken to further restructure the Lipoid Group entities in an effort to shield their assets from liability for his acts. He has transferred most of his share ownership in the Swiss and German branches of the Lipoid Group to a new company, Lipoid Beteiligungs GmbH, and has set

12

up a foundation, Lipoid Stiftung, to sit at the head of the new Lipoid Group ownership structure. Although he has stripped himself of most of his share ownership, he has appointed himself and persons beholden to him as boaad members of both Lipoid Beteiligungs and Lipoid Stiftung, and he continues to control and dominate the entire Lipoid Group of companies the same as before.

## IV.  MATTHIAS BECOMES THE CEO OF ALC AND LIPOID LLC

94.    Matthias received graduate degrees in Germany in economics and philosophy. He continued to assist his father in connection with the Lipoid Group's business, including working on the Lipoid Group's transfer pricing structure. Matthias was paid for his work by the Lipoid Group and he received dividends from the Group as a shareholder.

95.    In or about 2000, Matthias was serving as Regional Director of the Lipoid Group based in Germany. He received compensation from Lipoid GmbH for the services he was performing and he continued to receive dividends based upon his ownership of Lipoid Group equity. It appeared to Matthias that he and his father generally had an excellent relationship, and Matthias trusted and relied on his father in all respects, including that his father would assure that his 10% equity ownership in the entire Lipoid Group would not be adversely affected by all of the corporate restructurings that the Group was constantly going through.

96.    Until in or about 2002, the Lipoid Group had been selling products in the United States through a distributor, Vernon Walden, Inc., located in New Jersey. Around that time, Herbert decided to terminate the distributor and sell in the United States directly. Vernon Walden sued Lipoid GmbH and Lipoid AG in the United States District Court in New Jersey.

97.    Matthias, who was at the time studying for a Ph.D. program in economics at the New School in New York City, provided significant help to his father and the Lipoid Group in responding to this litigation.

13

98.     During this period, Matthias also supported the Lipoid Group's administration and operations in the United States, and was paid by the Lipoid Group for this work. This work was carried out by Matthias in his apartment in New York City.

99.     Herbert enlisted Matthias' help in establishing a U.S. subsidiary and an office in the United States. On or about March 12, 2004, Matthias filed, at Herbert's request, a Certificate of Formation for Lipoid LLC in New Jersey. Lipoid LLC had one member, Refu Verwaltungs GmbH ("Refu"), a company controlled by Herbert.

100.     On April 6, 2004, Refu capitalized Lipoid LLC with $1.00 USD and lent Lipoid LLC $49,999 USD. On February 2, 2005, Lipoid LLC repaid the $49,999 loan to Refu.

101.     Matthias found office space for administrative offices for Lipoid LLC in Newark, New Jersey. Initially, Matthias performed administrative work for the Lipoid Group, while sales to the United States were handled out of Switzerland. But, Herbert soon realized that sales in the United States could not be conducted efficiently from Switzerland and needed to be relocated to the United States. When the person in charge of sales refused to relocate from Switzerland, Herbert offered Matthias, in or about late 2005, the opportunity to assume full responsibility for the U.S. operations of the Lipoid Group.

102.     Matthias and Herbert negotiated the terms of the agreement under which Matthias would become head of North American operations for the Lipoid Group. Both acknowledged that Matthias could not assume these responsibilities while continuing with his Ph. D. program. In their discussions, Herbert assured Matthias – not once, but several times – that if Matthias took the position, he could have it for as long as he wanted. Herbert also promised Matthias that Matthias would succeed to a senior position (director and officer) of the entire Lipoid Group.

14

103.   In consideration of these promises, Matthias gave up his Ph. D. studies and assumed the position of head of the Lipoid Group's United States operations. His job description, as negotiated with Herbert, was "directing, managing and overseeing [the Lipoid Group's] flagship U.S. operations."

104.   Most of these discussions and negotiations relating to the terms of Matthias' employment took place between Herbert and Matthias in New York City.

105.   Matthias did not receive a formal written contract; his father's word was good enough for him since he reposed complete trust in his father.

106.   The "permanent" nature of Matthias' employment was confirmed in a letter filed by Lipoid LLC, on behalf of the Lipoid Group, with the United States Department of Citizenship and Immigration Services in support of Matthias' immigrant visa petition.  In it, Lipoid LLC requested that Matthias' petition be approved "so that he may permanently direct our enterprise in New Jersey and continue to implement Lipoid's global initiative."

107.   Matthias' duties were spelled out in detail in this letter.  Matthias' "key management responsibilities" were to:

- Direct and coordinate the organization's financial and budget activities to fund operations, maximize investments, and increase efficiency;

- Confer with board members, organization officials, and staff members to discuss issues, coordinate activities, and resolve problems;

- Analyze operations to evaluate performance of the company and its staff in meeting objectives, and to determine areas of potential cost reduction, program improvement, or policy change;

- Direct, plan, and implement policies, objectives, and activities of organizations or businesses to ensure continuing operations, to maximize returns on investments, and to increase productivity;

- Prepare budgets for approval, including those for funding and implementation of programs;

15

- Direct and coordinate activities of businesses or departments concerned with production, pricing, sales, or distribution of products;

- Negotiate or approve contracts and agreements with suppliers, distributors, federal and state agencies, and other organizational entities;

- Review reports submitted by staff members to recommend approval or to suggest changes;

- Appoint department heads or managers and assign or delegate responsibilities to them; and

    Direct human resources activities, including the approval of human resource plans and activities, the selection of directors and other high-level staff, and establishment and organization of major departments.

108.    In addition, Matthias assisted the Lipoid Group – and its other constituent companies – in connection with Group-wide needs, such as patent and trademark filings in the United States, arranging for internet hosting services and obtaining domain names for the Group.

109.    Matthias also made sales for the Lipoid Group to clients not located in North America.  These sales were booked to members of the Group other than Lipoid LLC and ALC. ALC sold to customers around the world, and some of its sales were booked to other members of the Lipoid Group.

110.    Matthias performed many of his duties for Lipoid LLC and the other members of the Lipoid Group at his apartment in New York City.  When Herbert would visit, he would stay at the apartment too and work on Lipoid business from there. Both Matthias and Herbert participated in meetings with potential customers and strategic partners in New York.

111.    The Lipoid Group often sent employees being paid by other members of the Group to New York to assist in sales and servicing to New York-based clients.

112.    The Lipoid Group functioned on a family structure, with the Herbert making all decisions and with formal corporate structure being largely ignored. Matthias reported directly to

his father and his job was to do whatever was necessary to build the Lipoid Group's sales in North America – subject, of course, to Herbert's overall direction and specific instructions.

113.    Herbert encouraged Matthias at all times to act as a shareholder and principal of Lipoid Group, which he was.

114.    In this context, Matthias set his own salary, fixed his own hours and had the authority to hire and fire. As circumstances required, Matthias assumed the titles of Managing Director, CEO, President and/or Director of Lipoid LLC. Matthias was paid substantially less than what others in similar positions were being paid.

115.    In or about 2007, Matthias engineered the acquisition of American Lecithin Company ("ALC") by the Lipoid Group. Matthias became the head of ALC, with the titles of President, CEO and/or Director, and with the same duties as he had for Lipoid LLC.

116.    Herbert was unhappy with the apartment Matthias was living and told him it was not suitable for Lipoid's needs. Herbert told Matthias that he would help him finance the acquisition of a more suitable apartment. In or about 2007, Herbert caused the Lipoid Group to finance the acquisition of an apartment in New York for Matthias' use. Upon information and belief, the funds came from the Lipoid Group in the form of a loan to Matthias. The loan was to be repaid out of Matthias' earnings from Lipoid LLC and ALC.

117.    Herbert asked Matthias to sign a note in favor of Complector AG, n/k/a Lipoid Verwaltungs AG, another Lipoid Group company, in the amount of the funds provided, for tax reasons.  The note was payable with interest in 2017.

118.    Upon information and belief, the interest was at least in some years charged as an intra-company transaction, to ALC and/or Lipoid LLC and/or other members of the Lipoid Group.

119.     Under Matthias' guidance, the Lipoid Group's U.S. sales grew dramatically, from $1 million when he started, to almost $20 million.

120.     Matthias also contributed to the formation of the non-profit Phospholipid Research Center, which acts as a marketing vehicle for the Lipoid Group.  Matthias recruited members, board members, and conference attendees for the Phospholipid Research Center and also arranged research projects for the Center in New York. Herbert acts as its President, and many of its functions are run out of the Lipoid Group's offices.

121.     Herbert was very pleased with Matthias' performance and in or about 2010, he promised Matthias an additional one percent interest in the Lipoid Group as a bonus, as well as a directorship in the overall Lipoid Group.

## V.     MATTHIAS' RELATIONSHIP WITH HERBERT DETERIORATES AND HERBERT ATTEMPTS TO COERCE MATTHIAS INTO RESIGNING

122.     In the summer of 2010, Matthias learned that his inheritance from his mother (who had passed away the previous year) had disappeared from the bank account in which it was kept. He queried Herbert about this and Herbert indicated that he had invested Matthias' money in the Lipoid Group because this is where Matthias' money belonged.  Matthias tried to get more information about what had happened to these funds and tried to get Herbert to return them to him, but Herbert refused to respond to his inquiries.

123.     In or about September 2010, Herbert sought to cause Matthias to file certain tax returns on behalf of Lipoid LLC with the United States Internal Revenue Service.  Matthias based upon the advice of the company's accountant, determined that there was a significant danger that these returns would violate United States tax laws and subject both Lipoid LLC and himself to potential civil and criminal penalties.

124.   Matthias tried to explain this to Herbert, but Herbert took this as a sign of disobedience and sought to coerce Matthias into obeying his will.

125.   On September 26, 2010, while Matthias was visiting with Herbert and his second wife, Birgit at their home in Germany, Matthias was discussing marketing issues with Birgit, who was an officer of the Lipoid Group and in charge of all Group communications, when Herbert came in and abruptly began yelling at Matthias. Matthias responded by saying that if this is how Herbert was going to act, he could pick his own pumpkins (Matthias had earlier offered to help Herbert pick pumpkins growing in his yard).

126.   A few days later he sent Matthias an email requesting that Matthias demote himself from being President of Lipoid LLC and ALC and repay the loan on the apartment immediately. He again threatened Matthias with bankruptcy and deportation.

127.   After this and over the next year, Herbert did whatever he could to undermine Matthias' ability to run the business of Lipoid LLC and ALC and to cause Matthias to resign.

128.   Herbert told Matthias that he no longer wanted to have anything to do with him and that he would no longer read his emails. Since Herbert was the only person that Matthias formally reported to, this made Matthias' job impossible. Herbert ignored Matthias' requests that Lipoid Group reduce the prices that it was charging Lipoid LLC and ALC so it could be more competitive. He began to communicate with Matthias' subordinates directly and to undermine Matthias' authority.

129.   Throughout all of this, Matthias sought to heal the rift with his father and refused to resign. But, no matter what Matthias did, Herbert kept escalating his campaign against Matthias.

## VI.    HERBERT TERMINATES MATTHIAS' EMPLOYMENT

130.    In August 2011, Herbert sent a letter on Lipoid LLC letterhead to Matthias at his apartment in New York stating that Matthias' employment and all positions with Lipoid LLC, ALC and all other Lipoid Group entities were being terminated "for cause" based on Matthias "unwillingness to work with the parent company and others within our group."

131.    Upon information and belief, Herbert gave Lipoid Group employees a different reason, stating that Matthias was terminated because he did not prepare reports.

132.    The termination was carried out by Herbert by fiat after he concluded that he could not force Matthias to voluntarily resign. Even then Matthias sought to find a way to repair his relationship with Herbert, but to no avail.  Matthias sought to discuss with Herbert the issues relating to the funds he was owed and a reasonable severance package.

133.    In response, Herbert caused the four Plaintiffs to sue Matthias for misappropriation of intellectual property and other bogus claims.

134.    Herbert spent several weeks in New York in or about August and September 2011 to implement the termination and change in management at Lipoid LLC and ALC, as well as to implement the steps needed to prevent Matthias from going into the lecithins and phospholipids business in competition with the Lipoid Group.

## VII.    HERBERT SUES MATTHIAS IN THIS COURT

135.    Herbert's response was to continue to threaten Matthias with bankruptcy and deportation.  He said he would not pay Matthias any of the funds that were due him and that he would receive nothing in the way of severance benefits.  He also commenced this action.

136.    He caused four members of the Lipoid Group to sue Matthias in this Court on the grounds that Matthias had wrongfully taken certain intellectual property, a laptop and some

software from these four companies and had retained them after his employment had been terminated.

137. As Matthias sought to defend himself in this litigation, Herbert took additional steps outside the litigation to punish Matthias and cause him harm.

## VIII. HERBERT WRONGFULLY ACTS TO KEEP MATTHIAS FROM ENTERING THE LECITHIN AND PHOSPHOLIPIDS BUSINESS

138. Since his firing, Matthias has attempted to set up his own business selling lecithin and phospholipid products.

139. Herbert and the Lipoid Group have sought to undermine Matthias' efforts to establish his new business and to earn a living in this manner.

140. Herbert has caused Matthias' membership in the industry-wide Phospholipid Research Center to be cancelled – even though it was Matthias who had contributed to the formation of this organization, including recruiting members, board members, and conference attendees.

141. Herbert and others working for the Lipoid Group have told several of Matthias' business relations that they should not do business with Matthias based on the false allegation or insinuation that Matthias was subject to a non-competition and confidentiality agreement. No such non-competition and confidentiality agreement exists.

142. Herbert and the Lipoid Group have attempted to undermine Matthias' business relations by making various other false accusations against Matthias to his business associates and acquaintances. These false accusations include that Matthias has engaged in criminal behavior.

143. Herbert has informed Matthias' business associates and acquaintances that he was going to report Matthias to the authorities for prosecution and seek his imprisonment.

144.    After learning that Matthias was looking into establishing a new business in the lecithin and phospholipids industry, Herbert caused the Lipoid Group companies to reduce some prices by as much as 50% - well below cost – in order to undercut Matthias' ability to compete in this industry.

145.    Herbert and the Lipoid Group undermined Matthias' relationship with a major client in New York by dropping their prices to that client by 50% in an effort to keep that client from doing business with Matthias.

## IX.    HERBERT'S WRONGFUL ASSERTION OF VARIOUS LOAN OBLIGATIONS BY MATTHIAS

146.    On or about January 1, 2013, Herbert asserted a claim that Matthias owed the sum of $490,000 to Lipoid V AG.

147.    Such claim was baseless as the note with Complector, whose name had apparently been changed to Lipoid Verwaltungs AG, was to be repaid out of Matthias' earnings with ALC and Lipoid LLC, and was not due until 2017.

148.    Herbert has made other similar baseless assertions about debts that Matthias owes to him or other members of the Lipoid Group.

## X.    HERBERT TAKES MATTHIAS' INTEREST IN LIPOID GRUNDSTUECKS

149.    On or about January 9, 2013, Herbert caused resolutions to be adopted by Lipoid Grundstuecks purporting to take away Matthias' 10% interest that company "for cause" and giving Herbert the right to determine how much Matthias would be compensated for his interest in Lipoid Grundstuecks. The "for cause" reasons given in the resolutions for taking Matthias' shares were that Matthias (a) had taken certain domain names that belonged to other members of the Lipoid Group, (b) had failed to file tax returns on behalf of Lipid LLC and ALC, and  (c) had not repaid a loan from Lipoid V AG.

150.     These resolutions were adopted without Matthias' presence and without compliance with German law. Further, the "for cause" reasons given were pretextual and the resolution fails for that reason, as well.

151.     Herbert took Matthias' shares in Lipoid Grundstuecks in retaliation for Matthias seeking sanctions against Herbert in this action for his failure and refusal to appear for his deposition in this case.

152.     When his shares in Lipoid Grundstuecks were taken, Matthias realized that his faith in his father to restore his interest in the Lipoid Group as a whole had been misplaced.

## XI.     "MERE DEPARTMENT" ALLEGATIONS

153.     To determine whether the subsidiary is a "mere department" of the parent corporation under New York law so as to subject the parent to jurisdiction in New York, a court must consider the following factors: (1) common ownership, (2) financial dependency of the subsidiary on the parent corporation, (3) the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities, and (4) the degree of control over the marketing and operational policies exercised by the parent. While the first factor, common ownership, is essential for an assertion of jurisdiction, the other three are important, but not essential.

154.     Under New York law, foreign subsidiaries of an entity subject to jurisdiction may also be held subject to jurisdiction if they meet the "mere department" test.

155.     Under New York law, equitable ownership is sufficient to meet the test of common ownership.

## A. Lipoid LLC and ALC

156.    Both Lipoid LLC and ALC were and are, under these criteria, "mere departments" of Lipoid Verwaltungs AG, Lipoid Beteiligungs GmbH, Lipoid Stiftung and Herbert; thus all of them are subject to personal jurisdiction in this Court.

157.    Lipoid Grundstuecks GmbH is a "mere department" of Lipoid Verwaltungs AG, Lipoid Beteiligungs GmbH, Lipoid Stiftung and Herbert. Thus it is subject to the jurisdiction of this Court.

158.    Phospholipid Research Center is also a "mere department" of Lipoid Verwaltungs AG, Lipoid Beteiligungs GmbH, Lipoid Stiftung and Herbert. Thus, it too is subject to the jurisdiction of this Court.

159.    Both Lipoid LLC and ALC are 100% owned by Lipoid Verwaltungs AG, which was at the time this lawsuit was filed owned 95% by Herbert and is now owned 100% owned by Lipoid Beteiligungs GmbH, which is in turn approximately 85% owned by Lipoid Stiftung.

160.    Lipoid LLC and ALC are financially dependent on Lipoid Verwaltungs AG, Lipoid Beteiligungs GmbH, Lipoid Stiftung and Herbert. The finances of Lipoid LLC and ALC were completely directed by Herbert, acting on behalf of their parent entities, Lipoid Verwaltungs AG, Lipoid Beteiligungs GmbH and Lipoid Stiftung, and other members of the Lipoid Group. Upon information and belief, Lipoid Verwaltungs AG and other entities in the Lipoid Group made loans to and guaranteed obligations of, Lipoid LLC and ALC. Lipoid LLC and ALC were not regarded as separate profit centers and their function was not to make profits. Rather, all excess cash and profits were channeled by Herbert to other entities in the Lipoid Group via repayment of intracompany loans, transfer pricing (what Lipoid LLC and ALC were charged by the German

manufacturing and Swiss sales entities in the Lipoid Group for the products it sold), and the payment of "management" and other fees to other members of the Lipoid Group.

161.     Lipoid LLC and ALC were completely financially dependent on Herbert, Lipoid Verwaltungs AG and the European Lipoid Group entities.  Herbert used Lipoid LLC and ALC to sell lecithin and phospholipid products into the United States, but he determined the prices they could sell at and what they were charged for the goods they sold that were manufactured by other Lipoid entities. Herbert would direct money due to Lipoid LLC or ALC to be paid to another Lipoid entity, such as when he ordered an IRS refund check due Lipoid LLC to be deposited in the account of one of the European Lipoid entities. Herbert caused other entities within the Lipoid Group to randomly charge Lipoid LLC and ALC "management" and other fees so as to move funds to where he determined.   Lipoid LLC and ALC had no ability to make independent financial decisions but were part of a single integrated enterprise directed by Herbert, where funds were moved around as he dictated.

162.     Herbert interfered in the selection and assignment of Lipoid LLC's and ALC's executive personnel and he and Lipoid Verwaltungs failed to observe corporate formalities with regard to Lipoid LLC, ALC and the other Lipoid entities.  From the summer of 2010 on, Herbert began to interfere in executive work assignments at Lipoid LLC and ALC, directing other employees of these two companies behind its CEO's back and seeking to force Matthias to quit. In August 2011, Herbert fired Matthias as CEO of Lipoid LLC and ALC by fiat and apparently replaced him by fiat as well.

163.     No corporate formalities were observed in connection with the firing of Matthias. Under the Lipoid LLC Operating Agreement, Matthias was designated as "Assistant Manager" and he could only be removed by the Member or the Manager (Lipoid Verwaltungs GmbH).

Notwithstanding the LLC Operating Agreement, Matthias had been designated as President of Lipoid LLC by Herbert and he was removed by Herbert, without any action by Lipoid Verwaltungs AG, the Member or Manager. Upon information and belief, no corporate resolutions relating to the termination of Matthias' employment were adopted by Lipoid Verwaltungs AG. As for ALC, no board resolutions were adopted by that company approving the termination of Matthias' employment as CEO and no formal notice was ever sent by ALC. Rather, the termination was effected by fiat of Herbert and notice was given to Matthias not by ALC, but by letter from Herbert on Lipoid LLC stationery.

164. The failure to comply with corporate formalities in the termination of Matthias was typical of the way Lipoid LLC, ALC and the other members of the Lipoid Group operated.

165. Herbert commenced this litigation against Matthias by fiat and without proper corporate action. There were no board meetings of ALC, Lipoid GmbH, Phospholipid GmbH or Phospholipid GmbH to consider the commencement of litigation and no resolutions adopted by any of them. None of these were independent corporate entities, with minds of their own. This is true notwithstanding Herbert's claim that he does not own a controlling share interest in Lipoid GmbH or Phospholipid GmbH – since he transferred his share ownership to Lipoid Beteiligungs and Lipoid Stiftung – and is now "only" a director of each.

166. Herbert and the Swiss and German branches of the Lipoid Group control all marketing and operational policies of Lipoid LLC and ALC and determine what products each of Lipoid LLC and ALC could sell at what prices and on what terms. They produce all marketing materials, all product specification sheets and all product quality assurance statements.

26

167.  Lipoid GmbH, Phospholipid GmbH and other Lipoid Group entities shipped products directly to customers in the United States, including New York, on a regular and frequent basis and relied on Lipoid LLC to do all of the paperwork and coordination for such sales.

168.  Decisions were often made by Herbert having vital impact on Lipoid LLC and ALC without even informing Matthias, their CEO. For example, the ownership of ALC was transferred from Lipoid LLC to Lipoid Verwaltungs AG by Herbert without informing Matthias. Further, after Matthias' termination, Herbert appointed himself the President of Plaintiffs ALC and Lipoid LLC solely for the purpose of dealing with Matthias and the issues surrounding his termination.

**B.  Lipoid Grundstuecks GmbH**

169.  Lipoid Grundstuecks is a "mere department" of Lipoid Verwaltungs AG, Lipoid Beteiligungs GmbH, Lipoid Stiftung and Herbert, and is thus subject to the jurisdiction of this Court.

170.  Lipoid Grundstuecks is 100% owned by Lipoid Verwaltungs AG, which was at the time this lawsuit was filed owned 95% by Herbert and is now owned 100% owned by Lipoid Beteiligungs GmbH, which is in turn approximately 85% owned by Lipoid Stiftung. When this lawsuit was filed, there were other shareholders in Lipoid Grundstuecks, including Matthias, but Herbert apparently caused 100% of the ownership of Lipid Grundstuecks to be transferred to Lipoid Verwaltungs AG.

171.  Lipoid Grundstuecks is financially dependent on Lipoid Verwaltungs AG, Lipoid Beteiligungs GmbH, Lipoid Stiftung and Herbert.  The finances of Lipoid Grundstuecks were completely directed by Herbert, acting on behalf of their parent entities, Lipoid Verwaltungs AG, Lipoid Beteiligungs GmbH and Lipoid Stiftung.

172.     Until in or about January 2013, Lipoid Grundstuecks was managed under the supervision of its shareholders, who included Herbert, Birgit, Matthias, Helge and Balder. Herbert interfered in the selection and assignment of Lipoid Grundstuecks management by causing the share ownership of Lipoid Grundstuecks to be transferred to Lipoid Verwaltungs AG and the managers of Lipoid Grundstuecks to be removed. Herbert interfered with the share ownership in Lipoid Grundstuecks by revoking Matthias' share ownership therein and by causing the other individual ownership interests to be revoked and/or transferred to Lipoid Verwaltungs AG, so that Lipoid Grundstuecks ownership could ultimately be transferred to Lipoid Beteiligungs GmbH, and Lipoid Stiftung. Herbert failed to properly observe corporate formalities in connection with the taking of Matthias' shares, by failing to give Matthias proper notice of a meeting called to revoke his shares, by holding such meeting without Matthias in attendance, by voting the shares of Helge and Balder in their absence and by using pretextual and illegitimate reasons to justify the taking of such shares "for cause."

173.     Herbert had complete control over the operational policies of Lipoid Grundstuecks. He determined what moneys were paid by Lipoid GmbH to it for the use of the land in Ludwigshafen that had been owned by Lipoid KG, and he determined what dividends, if any, would be paid by Lipoid Grundstuecks to its shareholders. Herbert caused all dividends paid to shareholders, including Matthias, above what was needed to pay taxes, to be reinvested in the Lipoid Group. When Matthias needed money to buy the apartment in New York, which Herbert had asked him to buy, Matthias was given some of his excess dividends (above what he needed to pay taxes) to help him buy the apartment, but Herbert made him sign a document that he would put this money back.

### C. The Phospholipid Research Center

174.    The "mere department" test may be met when the ownership is not actual, but merely equitable.  Under New York law, a party may have "equitable ownership" of a company when it exercises complete control over that company, but does not have actual ownership.

175.    Herbert and Lipoid Verwaltungs AG, Lipoid Beteiligungs GmbH, and Lipoid Stiftung have "equitable ownership" of the Phospholipid Research Center because they exercise complete control and domination over the Center, even though they do not have actual ownership. Thus, the Phospholipid Research Center is a "mere department" of Lipoid Verwaltungs AG, Lipoid Beteiligungs GmbH, Lipoid Stiftung and Herbert, and it thus subject to the jurisdiction of this Court.

176.    The Phospholipid Research Center is a marketing arm of the Lipoid Group.  Herbert is its President and he and the Lipoid Group entities have complete control over the marketing and operational policies of the Center. Upon information and belief, the marketing and operations of the Phospholipid Research Center are conducted out of Lipoid GmbH's offices in Ludwigshafen.

177.    The Phospholipid Research Center is financially dependent on Lipoid Verwaltungs AG, Lipoid Beteiligungs GmbH, Lipoid Stiftung and Herbert.  Its finances are completely directed by Herbert and these entities.

178.    Herbert exercised his dominion and control over the Phospholipid Research Center to terminate Matthias' membership therein.  Matthias had been registered for the Center's conference in 2011, with the registration confirmed.  However, in September 2011, one month after his termination, Matthias was barred from the conference on Herbert's direct instructions. Herbert revoked Matthias' membership in the Center without following the procedures set out in

the Phospholipid Research Center's by-laws governing membership revocation. Recently, Matthias had registered for a Phospholipid Research Center conference and received an admissions' ticket. But, when Herbert found out, he caused a Lipoid Group employee to write to Matthias revoking his admissions ticket.

179. Herbert's domination and control is further illustrated by his statement as his deposition on April 29, 2015, that he was going to change the by-laws of the Phospholipid Research Center to prohibit anyone who wasn't a scientist from becoming a member. Matthias is not a scientist.

## XII. "VEIL PIERCING" ALLEGATIONS

180. Herbert has done a great deal of structuring and restructuring of the Lipoid Group, both before and after the commencement of this lawsuit, in an effort to obfuscate and conceal the fact that he completely controls and dominates each and every one of the Lipoid Group companies. He has transferred his share ownership of entities to other companies so he can claim he no longer owns these entities while continuing to maintain control and dominion based on what he calls "economic realities." For purposes of veil-piercing under applicable law, it is not necessary that the controlling person have actual share ownership, just that he has actual control.

### A. Lipoid LLC

181. Under New Jersey law, the purpose of the doctrine of piercing the corporate veil is to prevent an independent corporation from being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law. There are two basic prongs to the veil-piercing analysis: (1) domination of the corporation and abuse of the corporate form; and (2) use of the corporate form to perpetrate fraud or injustice. The various factors change based on the particular factual landscape. Among the factors courts will look at are (a) gross undercapitalization,

(b) failure to observe corporate formalities, (c) non-payment of dividends, and (d) siphoning of funds of the corporation by the dominant stockholder.

182.     As demonstrated above, Lipoid LLC was used by Herbert to perpetrate an injustice on Matthias. This is an abuse of the corporate form. Herbert completely dominates Lipoid LLC.

183.     Lipoid LLC was and is thinly capitalized. It was initially capitalized with $1.00 when it was formed.  Its capitalizations were controlled by Herbert and he moved money in and out of Lipoid LLC (mainly out) as he wished. Lipoid LLC's function was not to make profits or build up its own equity. All cash flow was channeled to Lipoid Verwaltungs AG or other Swiss entities in the Lipoid Group. Upon information and belief, Lipoid Verwaltungs AG and other entities in the Lipoid Group guaranteed obligations of Lipoid LLC as needed.

184.     Lipoid LLC was completely financially dependent on Herbert, Lipoid Verwaltungs AG and the rest of the Lipoid Group. They determined what prices Lipoid LLC paid for the products and what they could sell them for.

185.     Lipoid LLC did not observe limited liability company formalities.  Lipoid LLC had an Operating Agreement, but its provisions were routinely ignored by its Members and Manager. For example, the Operating Agreement gave the Manager, Refu Verwaltungs GmbH, the sole authority to sign contracts on behalf of the LLC or to bind the LLC with third-parties.   The Assistant Manager, Matthias, could only act if and to the extent expressly provided by the manager in writing. In practice, Matthias ran the operations of Lipoid LLC, signed agreements for it and bound it with third parties – based upon oral authorizations from his father. The Manager did not authorize him in writing to so act. Further, there were no formal barriers between the management of Lipoid LLC and ALC and no separate meetings.

186.   Upon information and belief, Lipoid LLC did not pay any dividends.  Instead, all excess cash was siphoned off via payments characterized as repayment of intracompany loans, transfer pricing (what Lipoid LLC was charged by the German manufacturing and Swiss Lipoid Group entities sales for the merchandise it sold), and the notional payment of "management" and other fees to other members of the Lipoid Group.

187.   Funds of Lipoid LLC and the various Lipoid Group entities were routinely intermingled and one entity would routinely pay another's expenses or have another's revenues shifted to it.

**B. ALC**

188.   Delaware "alter ego" legal principals are similar to New Jersey's. To pierce the corporate veil a plaintiff must show a mingling of operations and an overall element of injustice or unfairness. Among the factors which a Delaware court will look at are: (a) undercapitalization, (b) whether dividends were paid, (c) whether corporate formalities were observed and officers functioned properly, and (d) whether funds were siphoned off.

189.   As demonstrated above, ALC was used by Herbert to perpetrate an injustice and unfairness on Matthias and its corporate operations were mingled with other Lipoid Group entities.

190.   Upon information and belief, ALC was undercapitalized for the needs of its business. Its capitalizations were controlled by Herbert and he moved money in and out of ALC (mainly out) as he wished. ALC's function was not to make profits or build up its own equity.  All cash flow was channeled to Lipoid Verwaltungs AG or other Swiss entities in the Lipoid Group. Upon information and belief, Lipoid Verwaltungs AG and other entities in the Lipoid Group guaranteed obligations of ALC as needed.

191.     ALC was completely financially dependent on Herbert, Lipoid Verwaltungs AG and the rest of the Lipoid Group. They determined what prices ALC paid for the products and what they could sell them for.

192.     ALC did not have annual meetings of shareholders or directors, and it did not keep minutes of corporate meetings. Further, there were no formal barriers between the management of Lipoid LLC and ALC and no separate meetings.

193.     Upon information and belief, ALC did not pay any dividends.  Instead, all excess cash was siphoned off via payments characterized as repayment of intracompany loans,  transfer pricing (what ALC was charged by the German manufacturing and Swiss sales entities in the Lipoid Group for the merchandise it sold), and the notional payment of "management" and other fees to other members of the Lipoid Group.

194.     Funds of ALC and the various Lipoid Group entities were routinely intermingled and one entity would routinely pay another's expenses or have another's revenues shifted to it.

195.     For example, a United States tax refund due Lipoid LLC was, at Herbert's instructions, deposited in a European Lipoid Group company account moving these funds overseas.

### C. Additional Facts Supporting "Alter Ego" Liability

196.     The Lipoid Group functioned as a single enterprise controlled and dominated by Herbert who used the Group companies to promote his personal agendas, and who acted by decree and did whatever he wanted whenever he wanted, regardless of what corporate formalities were required, and used them to further his personal agendas and not just the companies'.  This facts supporting this assertion include that (a) Herbert's termination of Matthias' employment by Lipoid LLC and ALC and the other acts he caused Lipoid Group companies to take against Matthias was

at least in part motivated by Herbert's own personal agenda against Matthias arising from the "pumpkin incident" and other imagined slights, (b) Herbert acted against Matthias entirely on his own and without any corporate formalities being observed or anyone else's involvement, (c) Herbert's commencement of this lawsuit by causing four Lipoid Group entities to sue Matthias entirely on his own by decree and without any corporate formalities or anyone else's' involvement, (d) Herbert's taking of Matthias' inheritance purportedly in repayment of a loan to Matthias by a Lipoid Group entity, entirely on his own without any documentation or corporate formalities substantiating the alleged loan or repayment, (e) Herbert's stripping of Lipoid KG of its business assets entirely on his own and without revealing to Matthias – who sat on Lipoid KG's board - the true reason he was doing so, (f) Herbert's stripping of Matthias' shares in Lipoid Grundstuecks because Matthias had asked this Court for sanctions against Herbert based upon his failure and refusal to be deposed, (g) Herbert's stripping of Matthias' shares in Lipoid Grundstuecks entirely on his own and without proper corporate formalities (Matthias was not given an opportunity to attend, Herbert and Birgit improperly voted Helge and Balder's shares and Herbert's reasons for taking Matthias's shares were pretextual and thus violated German law, and (h) Herbert's appointment of himself as Co-President of Lipoid LLC and ALC after Matthias' termination, with his responsibility limited to dealing with the litigation with Matthias. If the litigation with Matthias was proper and appropriate corporate business, then why couldn't the true officers of those entities handle it?

197.    Herbert often acted without informing the Lipoid officers and directors who were most affected by his acts, what he had done. For example, Herbert caused the ownership of ALC to be transferred from Lipoid LLC to Lipoid Verwaltungs AG without informing Matthias, who

was the CEO of ALC and Lipoid LLC. Herbert often caused funds due Lipoid LLC or ALC (such as tax refunds) to be moved to another Lipoid entity, without telling Matthias.

198.     Transactions between and among Lipoid Group entities were never at arms' length. They were orchestrated by Herbert primarily with the goal of reducing taxes for the Group as a whole.

199.     Herbert operated the Lipoid Group as a single entity and ignored the separate corporate identities of its constituent entities. Herbert referred to the business he ran as the "Lipoid Group" without differentiating among entities, he signed his correspondence on behalf of "Lipoid" generally without differentiating which Lipoid entity he was referring to. Herbert often referred to Lipoid LLC and ALC as "Lipoid USA" – as if they were one entity. In its written marketing materials and on the internet, the Lipoid Group portrayed itself as a single enterprise. All entities in the Lipoid Group shared the same website, www.lipoid.com, and shared the same domain for e-mails, "lipoid.com." All entities were referred to as "Lipoid" without regard to their separate identities.

200.     As just one example of the way the Lipoid Group presented itself, here is a current ad for an employee of "Lipoid" in Newark, New Jersey:

*Senior Manager of Business Development - Cosmetics*

*Founded in 1977, Lipoid is a globally leading manufacturer of lecithins and phospholipids for the pharmaceutical, cosmetic and dietetic industries. Lipoid also distributes botanical extracts and botanical actives made by Cosmetochem International, a member of the Lipoid Group of Companies.*

*Lipoid is headquartered in Europe and is privately held. Our high-grade products are scientifically developed in Lipoid's and Cosmetochem's laboratories and are manufactured by Lipoid on an industrial scale and marketed globally.*

*Lipoid is seeking a:*

**Senior Manager of Business Development - Cosmetics**

*in order to deepen our market penetration in North America.*

*The position is based in Newark, NJ at The National Newark Building (less than 2 blocks from Newark Penn Station).*

*While principally the assignment is to be engaged in the cosmetics and personal care industry, there will be opportunities to sell Lipoid's ingredients in the pharmaceutical industry as well.*

Notably absent from this advertisement is any mention of Lipoid LLC, even though the job is at Lipoid LLC's headquarters.

201.    The Lipoid Group did not distinguish between entities when it came to the payment of bills. For example Lipoid LLC paid some of the bills for legal services in connection with an arbitration in California involving other members of the group; Lipoid LLC was not a party to this arbitration. Lipoid LLC acted as agent for the entire Lipoid Group when it came to regulatory matters in the United States, such as trademark registrations and filings with the United States Food and Drug Administration.   At trade group meetings and trade shows, the Lipoid Group always presented itself as a single unified enterprise.  Lipoid LLC employees and employees of other Lipoid Group entities would appear at such events without distinguishing which Lipoid entity they worked for.

202.    Further, consistent with Lipoid Group policy, Matthias himself did work for the entire Group and represented himself as working for the Group on a regular and frequent basis. Matthias made intellectual property filings and enforced intellectual property rights of the entire Lipoid Group. Matthias investigated and prepared the acquisition of products and entities to be acquired by the Lipoid Group, e.g. Cosmetochem AG and presented himself as working for the Lipoid Group as a whole.

## FIRST COUNTERCLAIM AGAINST LIPOID LLC AND
## ALC AND THIRD-PARTY CLAIM AGAINST HERBERT

### WRONGFUL TERMINATION

203.    Matthias repeats and realleges each of the allegations set forth in the preceding paragraphs of this pleading.

204.    The termination of Matthias' employment with Lipoid LLC and ALC was wrongful because:

(a)    Herbert had promised Matthias that he could direct the Lipoid Group's United States operations for as long as he wished; this promise meant that Herbert could not unilaterally terminate Matthias' employment;

(b)    Herbert terminated Matthias because Matthias refused to acquiesce in Herbert's wrongful taking of his inheritance from his mother; and

(c)    Herbert terminated Matthias, because Matthias refused to file tax returns for the United States entities that Matthias believed violated United States tax laws.

205.    The taking of Matthias' shares in Lipoid Grundstuecks and in the Lipoid Group was wrong and a further act of retaliation against Matthias.

206.    Herbert's acts were willful and malicious and intended to do Matthias harm.

207.    As a result thereof, Matthias has suffered monetary damages believed to be in excess of $75 million.

### SECOND COUNTERCLAIM AGAINST LIPOID LLC AND
### ALC AND THIRD-PARTY CLAIM AGAINST HERBERT

### BREACH OF CONTRACT OF EMPLOYMENT

208.    Matthias repeats and realleges each of the allegations set forth in the preceding paragraphs hereof.

209. As consideration for Matthias' agreement to give up his Ph. D. program and accept employment with Lipoid LLC, Herbert promised Matthias that he could serve as the head of the Lipoid Group's United States operations – Lipoid LLC and ALC - for as long as he wished.

210. The promise was made on a number of occasions and in particular in 2005 after the head of the Lipoid Group's North American sales refused to relocate to the United States. The promise of job security was made in the context of inducing Matthias to give up his Ph. D program and to accept full-time employment with Lipoid LLC.

211. Matthias accepted Herbert's offer of employment with Lipoid LLC (and later ALC) based upon this promise, and this was an essential element of the agreement between Herbert, Lipoid LLC and ALC, on the one hand, and Matthias on the other.

212. Herbert's termination of Matthias' employment constitutes a breach of the agreement between them that Matthias could work as head of Lipoid LLC and ALC as long as he wished.

213. Herbert's termination of Matthias' employment also constitutes a breach of the implied covenant of good faith and fair dealing that is implicit in every contract.

214. In 2010, Herbert promised Matthias one percent in additional equity in the Lipoid Group and a position in senior management of the Lipoid Group. These promises were made to induce Matthias to continue as CEO of Lipoid LLC and ALC and as consideration therefore.

215. Herbert breached this promise.

216. As a result thereof, Matthias has suffered monetary damages believed to be in excess of $75 million.

38

## THIRD THIRD-PARTY CLAIM AGAINST HERBERT, LIPOID STIFTUNG, LIPOID BETEILIGUNGS GmbH, LIPOID VERWALTUNGS AG and LIPOID GRUNDSTUECKS GmbH

## BREACH OF CONTRACT – EQUITY IN LIPOID GROUP

217.     Matthias repeats and realleges each of the allegations set forth in the preceding paragraphs hereof.

218.     Herbert breached the agreement with Matthias that gave Matthias a 10% equity interest in the Lipoid Group.  Herbert did so by wrongfully transferring assets and the Lipoid business from Lipoid KG to other entities in which Matthias was not given any equity.

219.     Herbert represented to Matthias that the purpose of the transfers and restructuring the Lipoid Group business was for operating efficiencies and liability limitation, and not to deprive Matthias of his 10% ownership interest in the business. Implicit in this representation was a promise to restore Matthias' 10% ownership interest in the entire Lipoid Group. Herbert breached this promise.

220.     Later, Herbert promised Matthias one percent in additional equity in the Lipoid Group and a position in senior management of the Group. These promises were made to induce Matthias to continue as CEO of Lipoid LLC and ALC and as consideration therefore. Herbert breached these promises.

221.     Still later, Herbert breached the agreement with Matthias pursuant to which Matthias held a 10% equity interest in Lipoid Grundstuecks.

222.     All of these acts by Herbert also constitute breaches of the implied covenant of good faith and fair dealing that is implicit in every contract.

223.     Lipoid Stiftung, Lipoid Beteiligungs GmbH, Lipoid Verwaltungs GmbH and Lipoid Grundstuecks are successors in interest to the shares wrongfully taken from Matthias and

as such are liable for the return of such shares or for compensation Matthias for the value of such shares.

## FOURTH THIRD-PARTY CLAIM AGAINST HERBERT

### FRAUD

224.    Matthias repeats and realleges each of the allegations set forth in the preceding paragraphs hereof.

225.    Herbert's statement that the restructuring of the Lipoid Group was not intended to take away Matthias' shares in the Lipoid Group was a material misrepresentation, which Herbert knew was false when made; it was intended to induce reliance on Matthias' part that he would have such 10% interest restored to him, and to induce him not to challenge Herbert's stripping of Lipoid KG of its assets and not to demand compensation therefor.   As a result of such misrepresentation, Matthias has been damaged in an amount to be determined at trial.

226.    Herbert's statements that Matthias could be the head of the Lipoid Group's U.S. operations as long as he wanted, that Matthias was and should act as an equity owner in the Lipoid Group, including Lipoid LLC and ALC and that Matthias would receive an additional 1% equity in the entire Lipoid Group and a directorship or other senior position therein, were material misrepresentations, which Herbert knew were false when made; they were intended to induce reliance on Matthias' part to continue to continue to perform services for the Lipoid Group, including Lipoid LLC and ALC.   As a result of such misrepresentation, Matthias has been damaged in an amount to be determined at trial.

227.    Herbert's acts were willful and malicious and intended to cause Matthias financial harm.  As a result thereof, Matthias is also entitled to punitive damages and counsel fees and expenses as a result of Herbert's willful and malicious behavior.

## FIFTH THIRD-PARTY CLAIM AGAINST HERBERT

### BREACH OF FIDUCIARY DUTIES

228.     Matthias repeats and realleges each of the allegations set forth in the preceding paragraphs hereof.

229.     Matthias reposed trust and confidence in Herbert, as his father, to look out for his interests in the Lipoid Group. A relationship of trust and confidence existed between Matthias and Herbert, and Herbert was in a fiduciary capacity towards Matthias.

230.     As the controlling shareholder in Lipoid KG, Lipoid Grundstuecks and each of the other members of the Lipoid Group, Herbert owed Matthias fiduciary duties as a minority shareholder. Herbert was obligated to act with the utmost degree of good faith and fair dealing towards Matthias.

231.     Herbert breached his fiduciary duties to Matthias by (a) stripping Lipoid KG of its business and assets, (b) telling Matthias that the purpose of his actions was for operational efficiencies and to limit liabilities, and not to strip Matthias of his shares in the Lipoid Group business; (c) stripping Matthias of his interest in the Lipoid Group and in Lipoid Grundstuecks GmbH, and (d) wrongfully terminating Matthias' employment with Lipoid LLC and ALC.

232.     Herbert's breaches were willful and malicious and intended to do Matthias harm.

233.     As a result thereof, Matthias is entitled to compensation believed to be in excess of $75 million, plus punitive damages, and attorneys' fees and expenses.

### SIXTH COUNTERCLAIM AGAINST ALL PLAINTIFFS AND THIRD-PARTY CLAIM AGAINST ALL THIRD-PARTY DEFENDANTS

### OPPRESSION

234.     Matthias repeats and realleges each of the allegations set forth the in preceding paragraphs hereof.

235.    Matthias was a direct beneficial shareholder in the Lipoid Group, including Lipoid Verwaltungs AG, and an indirect beneficial shareholder in Lipoid LLC and ALC. Matthias was also a shareholder in Lipoid Grundstuecks GmbH.

236.    Matthias had a reasonable expectation that Herbert would not strip Lipoid KG in which he had a 10% interest of all of its valuable assets and businesses.

237.    Matthias had a reasonable expectation that Herbert would maintain Matthias' 10% beneficial ownership interest in the Lipoid Group for Matthias' benefit and that he would restore Matthias' 10% ownership interest in the Lipoid Group to him.

238.    Matthias had a reasonable expectation that he could remain in the positions of head of Lipoid LLC and ALC for as long as he wished.

239.    Matthias had a reasonable expectation that his share ownership in Lipoid Grundstuecks would not be taken from him.

240.    Herbert frustrated such reasonable expectations.

241.    Herbert acted unfairly towards Matthias and did not deal fairly with him.

242.    Herbert acted fraudulently and illegally when he mismanaged Lipoid LLC, ALC and the other Lipoid Group companies, abused his authority as the person in control of these entities, and when he acted oppressively and unfairly toward Matthias in his capacities as shareholder, director, officer, and/or employee of Lipoid LLC, ALC and other Lipoid Group companies.

243.    As a result thereof Matthias has been harmed in an amount believed to be in excess of $75 million.

## SEVENTH COUNTERCLAIM AGAINST ALL PLAINTIFFS
## AND THIRD-PARTY CLAIM AGAINST ALL THIRD-PARTY DEFENDANTS

## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

244.    Matthias repeats and realleges each of the allegations set forth in the preceding paragraphs hereof.

245.    Matthias had a reasonable expectation of economic advantage as a result of his efforts in the lecithin and phospholipid industries and his contacts with various persons in such industries.

246.    Herbert's interference with Matthias' business efforts was done intentionally, with malice and without justification or excuse.

247.    Herbert wrongfully caused Matthias' membership in the Phospholipid Research Center to be cancelled as part of his efforts to interfere with Matthias' business relations.

248.    Herbert also interfered with Matthias' business relations when he falsely alleged to prospective customers of Matthias' that Matthias was subject to a non-competition and confidentiality agreement.

249.    Herbert made false accusations to Matthias' business contacts, including that Matthias had engaged in criminal behavior.

250.    Herbert dramatically lowered Lipoid Group prices to prospective customers of Matthias to below cost, in order to prevent Matthias from successfully marketing his products.

251.    Herbert's interference with Matthias' business caused damage to Matthias' business prospects and caused a number of transactions that Matthias was working on to fail.

252.    As a result thereof, Matthias is entitled to damages in an amount to be determined.

## EIGHTH THIRD-PARTY CLAIM AGAINST ALL THIRD-PARTY DEFENDANTS

## MISAPPROPRIATION

253.    Matthias repeats and realleges each of the allegations set forth in in the preceding paragraphs hereof.

254.    Herbert misappropriated Matthias' shares in the Lipoid Group and in Lipoid Grundstuecks and the funds Matthias received as an inheritance.

255.    As a result thereof, Matthias is entitled to the return of such shares and funds or compensation for the value of such shares and such funds.

256.    Matthias is also entitled to all accretions thereto under a constructive trust theory, as well as punitive damages, counsel fees and expenses.

## NINTH THIRD-PARTY CLAIM AGAINST ALL THIRD-PARTY DEFENDANTS

## CONVERSION

257.    Matthias repeats and realleges each of the allegations set forth in the preceding paragraphs hereof.

258.    Matthias had actual title, possession, or control of the shares that Herbert converted.

259.    Herbert's taking of Matthias' shares was wrongful.

260.    Under applicable law, Herbert had no right to such shares.

261.    Herbert wrongfully exercised dominion over such shares, and converted such shares to his own use.

262.    As a result thereof, Matthias is entitled to the return of such shares or compensation for the value of such shares.

263.    Matthias is also entitled to all accretions thereto under a constructive trust theory.

## TENTH THIRD-PARTY CLAIM AGAINST ALL PLAINTIFFS AND THIRD-PARTY DEFENDANTS

### DEFAMATION

264. Matthias repeats and realleges each of the allegations set forth in the preceding paragraphs hereof.

265. Herbert made and caused members of the Lipoid Group to make false statements about Matthias to third parties, including without limitation, that Matthias had committed crimes and would soon face imprisonment and that Matthias had failed to file reports as part of his duties with ALC and Lipoid LLC.

266. These statements were made with knowledge of their falsity and with intent to harm Matthias.

267. Matthias suffered injury to his reputation and business prospects, as a result of Herbert's defamatory remarks.

268. As a result thereof, Matthias is entitled to damages in an amount to be proven at trial, plus punitive damages, counsel fees and expenses.

## ELEVENTH COUNTERCLAIM AGAINST ALL PLAINTIFFS AND THIRD-PARTY CLAIM AGAINST ALL THIRD PARTY DEFENDANTS

### APPRAISAL AND ACCOUNTING

269. Matthias repeats and realleges each of the allegations set forth in the preceding paragraphs hereof.

270. Matthias reposed trust and confidence in Herbert, as his father, to look out for his interests in the Lipoid Group. A relationship of trust and confidence existed between Matthias and Herbert, and Herbert was in a fiduciary capacity towards Matthias.

45

271. Herbert is obligated to account to Matthias for the value of his interest in the Lipoid Group.

272. Further, Matthias is entitled to receive the fair value of his interest in the Lipoid Group.

273. Under applicable legal and equitable principles, a shareholder's shares may only be taken away "for cause" and then by following precise procedures.

274. The entire procedure whereby Herbert stripped Matthias of his shares is wrongful in that it was retaliatory, pretextual and it violated applicable principles of law and equity.

275. The procedure violated §47(3) of the German GmbH Law, which requires authorizations to vote at a shareholders meeting to be in writing.

276. According to the notice of the vote, Herbert and his current wife, Birgit, voted for two other shareholders, Helge and Balder, without any mention of written authorizations.

277. The procedure violated §51a of the German GmbH law, which provides that managing directors must provide information to shareholders upon request.

278. Herbert withheld information and essential corporate documents from Matthias despite Matthias' requests for them.

279. To obtain a complete accounting, the German and Swiss parents of the Lipoid Group companies should be named as third-party defendants in this lawsuit.

280. Herbert has constantly shuffled the corporate structure of the Lipoid Group so that Matthias is unclear as to which Lipoid Group entities should be named in this lawsuit.

281. Matthias has sought to take Herbert's deposition in this case for almost three years now, but Herbert had steadfastly refused to be deposed until April 29, 2015, when his deposition was taken.

282.     Matthias is entitled to have the Court appoint a corporate valuation expert to conduct an appraisal of the Lipoid Group and an accounting expert to conduct the accounting of the Lipoid Group and to have Matthias' entitlement to fair value compensation for the taking of his shares determined by this Court.

283.     As a result thereof, Matthias is entitled to compensation believed to be in excess of $55 million.

## ELEVENTH COUNTERCLAIM AGAINST ALL PLAINTIFFS AND THIRD-PARTY CLAIM AGAINST ALL THIRD PARTY DEFENDANTS ON BEHALF OF LIPOID GRUNDSTUECKS GmbH

### BREACH OF FIDUCIARY DUTIES

284.     Matthias repeats and realleges each of the allegations set forth in the preceding paragraphs hereof.

285.     Herbert owed fiduciary duties to Lipoid KG n/k/a Lipoid Grundstuecks GmbH as a director and is its majority shareholder.

286.     Herbert breached his fiduciary duties to Lipoid KG n/k/a Lipoid Grundstuecks GmbH by wrongfully transferring its business assets and business to other entities without adequate compensation.

287.     All of the Plaintiffs and Third-Party Defendants own assets and interests in the Lipid Group business that rightfully belong to Lipoid Grundstuecks, and are obligated to return and transfer such assets and interests to Lipoid Grundstuecks. Herbert is obligated to cause such assets to be returned and transferred. In the alternative, all Plaintiffs and Third-party Defendants (other than Lipoid Grundstuecks) are obligated or to compensate Lipoid Grundstuecks GmbH for the present value thereof.

288.    Herbert's acts were willful and malicious and Matthias is entitled to punitive damages, attorneys' fees and expenses of this action.

289.    A demand on Herbert to bring this action on behalf of Lipoid Grundstuecks would be futile since he would be called upon to sue himself and other entities he controls and dominates.

**WHEREFORE**, Defendant, Counterclaimant and Third-Party Plaintiff Carsten Matthias Rebmann demands judgment:

A.    On the First Counterclaim and Third-Party Claim for wrongful termination, damages against ALC, Lipoid LLC and Herbert, in an amount to be proven, but believed to be not less than $75 million, plus punitive damages, counsel fees and expenses.

B.    On the Second Counterclaim and Third-Party Claim for breach of contract, damages against all Plaintiffs and Herbert, in an amount to be proven, but believed to be not less than $75 million.

C.    On the Third Third-Party Claim for breach of contract, damages against Herbert, Lipoid Stiftung, Lipoid Beteiligungs GmbH, Lipoid Verwaltungs AG and Lipoid Grundstuecks GmbH, in an amount to be proven, but believed to be not less than $55 million.

D.    On the Fourth Third-Party Claim against Herbert for fraud, in an amount to be proven, but believed to be not less than $55 million, plus punitive damages, counsel fees and expenses.

E.    On the Fifth Counterclaim and Third-Party Claim for breach of fiduciary duties, against Herbert, damages in an amount to be determined but believed to be not less than $75 million, plus punitive damages, counsel fees and expenses.

F. On the Sixth Counterclaim and Third-Party Claim for oppression against all Plaintiffs and all Third-party Defendants, damages in an amount to be determined, but believed to be not less than $75 million, plus punitive damages, counsel fees and expenses.

G. On the Seventh Counterclaim and Third-Party Claim for tortious interference with business relations against all Plaintiffs and all Third-party Defendants, damages in an amount to be proven at trial, plus punitive damages, counsel fees and expenses.

H. On the Eighth Third-Party Claim for misappropriation, an order directing the return of Matthias' equity interest in the Lipoid Group, including Lipoid Grundstuecks, or in the alternative, damages against all Third-Party Defendants in an amount to be proven at trial, plus punitive damages, counsel fees and expenses;

I. On the Ninth Third-Party Claim for conversion, an order directing the return of Matthias' equity interest in the Lipoid Group, or in the alternative, damages against all Third-Party Defendants in an amount to be proven at trial, plus punitive damages, counsel fees and expenses;

J. On the Tenth Third-Party Claim for defamation, damages against all Plaintiffs and Third-party Defendants in an amount to be proven at trial, plus punitive damages, counsel fees and expenses.

K. On the Eleventh Counterclaim and Third-Party Claim, an order directing an appraisal and accounting of the Lipoid Group entities and of Matthias' interest therein, against all Plaintiffs and all Third-Party Defendants, and damages in an amount to be proven at trial.

L.    On the Twelfth Counterclaim and Third-Party Claim on behalf of Lipoid Grundstuecks GmbH, an order directing that all Plaintiffs and all Defendants return and transfer the assets and business that were wrongfully taken from Lipoid Grundstuecks GmbH, together with all accretions thereto, and/or compensate Lipoid Grundstuecks for the present value thereof, as well as punitive damages, counsel fees and expenses.

Dated: May 15, 2015

Respectfully submitted,

Samuel Goldman
Samuel Goldman & Associates

*Attorney for Defendant and Third-Party Plaintiff*

1185 Avenue of the Americas
18th Floor
New York, NY 10036
Tel. (212) 725-1400
Fax: (212) 725-0805

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERICAN LECITHIN COMPANY,
LIPOID GmbH,
LIPOID, LLC, and
PHOSPHOLIPID GmbH,

        Plaintiffs,

-v-

CARSTEN MATTHIAS REBMANN,

        Defendant, Counterclaimant and
        Third-Party Plaintiff,

-v-

HERBERT REBMANN, LIPOID GRUNDSTUECKS
GMBH, LIPOID VERWALTUNGS, GMBH, LIPOID
AG, and COMPLECTOR AG

        Third-Party Defendants.

---

Case No. 12-cv-00929-VSB-KNF
**Document Electronically Filed**

## STIPULATION

**WHEREAS,** in its Memorandum and Order entered on December 12, 2014 (Dkt. 141), the Court dismissed certain counterclaims asserted by Defendant Carsten Matthias Rebmann ("Matthias") in his Amended Answer, Counterclaims and Third-Party Claims without prejudice and indicated that it would afford Defendant an opportunity to amend; and

**WHEREAS,** in a separate Memorandum and Order (Dkt. 140), the Court ruled that personal jurisdiction over Third-Party Defendant Herbert Rebmann ("Herbert" or "Dr. Rebmann") is deemed established; and

**WHEREAS,** Herbert's deposition was held on April 29, 2015, in Frankfurt, Germany pursuant to the Court's Order entered on March 27, 2015 (Dkt. 155); and

1

WHEREAS, pursuant to said Order, Matthias was granted until May 15, 2015 to submit his request for leave to file an amended pleading; and

WHEREAS, the parties have agreed to submit this Stipulation and request that it be "So Ordered" by the Court.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED:**

1.      Plaintiffs and Third-Party Defendants hereby consent, pursuant to Federal Rules of Civil Procedure 15(a)(2), to the filing of an amended pleading by Matthias, upon the following conditions.

2.      The foregoing consent shall not constitute a waiver by Plaintiffs, Third-Party Defendants or Matthias of any rights they may otherwise have in this action, including without limitation Plaintiffs and Third-Party Defendants' right to move to dismiss or otherwise respond to the amended pleading, and each party's right to demand additional discovery with respect to, including without limitation, issues relating to the relationships between and among Matthias, Plaintiffs, and Third-Party Defendants.

3.      The foregoing consent shall not constitute an admission that any of the Third-Party Defendants are subject to personal jurisdiction in this case (but recognizing that the Court has already determined that it has personal jurisdiction over Herbert).

4.    Plaintiffs and Third-Party Defendants shall have until June 12, 2015 to respond to

Matthias' amended pleading.

Dated: May 15, 2015


WUERSCH & GERING LLP

By: _____
Gregory F. Hauser, Esq.
Attorney for Plaintiffs/Third-Party Defendants
100 Wall Street, 10ᵗʰ Floor
New York, NY 10005
(212) 509-5050


SAMUEL GOLDMAN & ASSOCIATES

By: _____
Samuel Goldman, Esq.
Attorneys for Defendant/Counterclaimant
1185 Avenue of the Americas; 18ᵗʰ Floor
New York, NY 10036
(212) 725-1400


SO ORDERED:


_____
Hon. Vernon S. Broderick, USDJ

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERICAN LECITHIN COMPANY,
LIPOID GmbH,
LIPOID, LLC, and
PHOSPHOLIPID GmbH,

      Plaintiffs,

-v-

CARSTEN MATTHIAS REBMANN,

      Defendant, Counterclaimant and
      Third-Party Plaintiff,

-v-

HERBERT REBMANN, LIPOID GRUNDSTUECKS
GMBH, LIPOID VERWALTUNGS, GMBH, LIPOID
AG, and COMPLECTOR AG

      Third-Party Defendants.

Case No. 12-cv-00929-VSB-KNF
**Document Electronically Filed**

---

## STIPULATION

**WHEREAS,** in its Memorandum and Order entered on December 12, 2014 (Dkt. 141), the Court dismissed certain counterclaims asserted by Defendant Carsten Matthias Rebmann ("Matthias") in his Amended Answer, Counterclaims and Third-Party Claims without prejudice and indicated that it would afford Defendant an opportunity to amend; and

**WHEREAS,** in a separate Memorandum and Order (Dkt. 140), the Court ruled that personal jurisdiction over Third-Party Defendant Herbert Rebmann ("Herbert" or "Dr. Rebmann") is deemed established; and

**WHEREAS,** Herbert's deposition was held ~~pursuant to Court order~~ on April 29, 2015, in Frankfurt, Germany pursuant to the Court's Order entered on March 27, 2015 (Dkt. 155); and

WHEREAS, pursuant to said Order, Matthias was granted until May 15, 2015 to submit his request for leave to file an amended pleading; and

WHEREAS, the parties have agreed to submit this Stipulation and request that it be "So Ordered" by the Court.

## NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED:

1.     Plaintiffs and Third-Party Defendants hereby consent, pursuant to Federal Rules of Civil Procedure 15(a)(2), to the filing of an amended pleading by Matthias, upon the following conditions.

2.     The foregoing consent shall not constitute a waiver by Plaintiffs, Third-Party Defendants or Matthias of any rights they may otherwise have in this action, including without limitation Plaintiffs and Third-Party Defendants' right to move to dismiss or otherwise respond to the amended pleading, and each party's right to demand additional discovery including without limitation, with respect to issues relating to the relationships between and among Plaintiffs, and Third-Party Defendants, and between and among them and Matthias.

3.     The foregoing consent shall not constitute an admission that any of the Third-Party Defendants are subject to personal jurisdiction in this case (but recognizing that the Court has already determined that it has personal jurisdiction over Herbert).

4.   Plaintiffs and Third-Party Defendants shall have until June 12, 2015 to respond to

Matthias' amended pleading.

Dated: May 15, 2015

WUERSCH & GERING LLP                          SAMUEL GOLDMAN & ASSOCIATES

By: _____                    By: _____
Gregory F. Hauser, Esq.                        Samuel D. Levy, Esq.
Attorney for Plaintiffs/Third-Party Defendants Attorneys for Defendant/Counterclaimant
100 Wall Street, 10th Floor                    1185 Avenue of the Americas; 18th Floor
New York, NY 10005                             New York, NY 10036
(212) 509-5050                                 (212) 725-1400


SO ORDERED:


_____
Hon. Vernon S. Broderick, USDJ

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
AMERICAN LECITHIN COMPANY,
LIPOID GmbH,
LIPOID LLC, and
PHOSPHOLIPID GmbH,

                        Plaintiffs,

-against-


CARSTEN MATTHIAS REBMANN,

                        Defendant, Counterclaim
                        and Third-Party Claim
                        Plaintiff,

-against-


HERBERT REBMANN,
LIPOID GRUNDSTUECKS GMBH,
LIPOID VERWALTUNGS, GMBH,
LIPOID AG, and COMPLECTOR AG,

                        Third-Party Defendants.
-----------------------------------------------------------x

Case No. 12-cv-00929-VSB-KNF

**STIPULATION**

        **IT IS HEREBY STIPULATED AND AGREED** that the deadlines for Defendant to respond to Plaintiff's motion to dismiss counterclaims and for Plaintiffs to respond to Defendant's motion for contempt and sanctions in the above-captioned matter are extended to April 8, 2014.


Dated: March 28, 2014


WUERSCH & GERING LLP

By: _____
      Gregory F. Hauser
Attorneys for Plaintiffs
100 Wall Street, 10th Floor

SAMUEL GOLDMAN & ASSOCIATES

By: _____
      Samuel Goldman
Attorneys for Defendant
100 Park Avenue, 20TH Floor

1