UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
AMERICAN LECITHIN COMPANY,
LIPOID GmbH,
LIPOID LLC, and
PHOSPHOLIPID GmbH,                                        Case No. 12-cv-00929-VSB-KNF
                               Plaintiffs,


-against-


CARSTEN MATTHIAS REBMANN,
                    Defendant, Counterclaim
                    and Third-Party
                    Plaintiff,


-against-


HERBERT REBMANN,
LIPOID GRUNDSTUECKS GMBH,
LIPOID VERWALTUNGS, GMBH,
LIPOID AG, and COMPLECTOR AG,

                    Third-Party Defendants.
--------------------------------------------------------x



**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT AND THIRD-PARTY
PLAINTIFF CARSTEN MATTHIAS REBMANN'S MOTION FOR SUMMARY
JUDGMENT DISMISSING PLAINTIFFS' AMENDED COMPLAINT**



WUERSCH & GERING LLP
Gregory F. Hauser
Matthew Damm
100 Wall Street, 10th Floor
New York, New York 10005
(212) 509-5050

Attorneys for Plaintiffs and
Third-Party Defendant

## **Table of Contents**

Preliminary Statement ............................................................................................................ 1

Factual Background .............................................................................................................. 1

Procedural History ............................................................................................................... 2

Facts Relevant to Defendant's Motion for Summary Judgment .......................................... 3

Argument ............................................................................................................................. 8

    I.     Summary Judgment Dismissing Plaintiffs' Cybersquatting Claim Should Be
          Denied. ................................................................................................................ 9

    II.    Summary Judgment Dismissing Plaintiffs' Breach of Fiduciary Duties Claims
          Relating To The Domain Names Should Be Denied. ......................................... 13

    III.   Summary Judgment Dismissing Plaintiffs' Claim for Conversion of Domain
          Names Should Be Denied. .................................................................................. 17

    IV.  Summary Judgment Dismissing Plaintiffs' Breach of Fiduciary Duties And
          Conversion Claims Relating To the CRM Software And Laptop Should Be Denied. .... 18

    V.    The Doctrines Of Unclean Hands And Laches Do Not Bar Plaintiffs' Claims. ............. 18

Conclusion ......................................................................................................................... 19

## Table of Authorities

**CASES**

*Abraham Zion Corp. v. Lebow*
593 F. Supp. 551 (S.D.N.Y. 1984) ....................................................................... 16

*Alpha Recycling, Inc. v. Crosby*
No. 14-CV-5015 (JPO), 2016 WL 1178774 (S.D.N.Y. Mar. 23, 2016) .............................. 10

*Am. Fed. Grp., Ltd. v. Rotherberg*
91 CIV. 7860(THK), 2003 WL 22349673 (S.D.N.Y. Oct. 14, 2003) ................................. 16

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ......................................................................................... 8

*Ardis Health, LLC v. Nankivell*
No. 11 CIV. 5013 NRB, 2011 WL 4965172 (S.D.N.Y. Oct. 19, 2011) .............................. 17

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) ......................................................................................... 8

*Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*
14-CV-8467 (JMF), 2016 WL 5416498 (S.D.N.Y. Sept. 28, 2016) ................................... 16

*Citibank, N.A. v. Citytrust*
756 F.2d 273 (2d Cir. 1985) ................................................................................ 19

*Coca-Cola Co. v. Purdy*
382 F.3d 774 (8th Cir. 2004) ............................................................................... 12

*Dudley v. HealthSource Chiropractic, Inc.*
585 F. Supp. 2d 433 (W.D.N.Y 2008) ................................................................... 11

*Gen. Motors LLC Ignition Switch Litig.*
No. 14-MC-2543 (JMF), 2018 WL 1638096 (S.D.N.Y. Apr. 3, 2018) .............................. 16

*Gench v. HostGator.com LLC*
No. 14 CIV. 3592 RA GWG, 2015 WL 569154 (S.D.N.Y. Feb. 11, 2015) ......................... 11

*Gioconda Law Grp. PLLC v. Kenzie*
941 F. Supp. 2d 424 (S.D.N.Y. 2013) ............................................................. 11, 12

*Hamptons Locations v. Rubens*
640 F. Supp. 2d 208 (E.D.N.Y. 2009) ................................................................... 12

*Island Software and Computer Serv., Inc. v. Microsoft Corp.*
   413 F.3d 257 (2d Cir. 2005) ................................................................. 4

*Jurista v. Amerinox Processing, Inc.*
   492 B.R. 707 (D.N.J. 2013) .................................................................. 14

*KDW Restructuring & Liquidation Servs. LLC v. Greenfield*
   874 F. Supp. 2d 213 (S.D.N.Y. 2012) ................................................... 14

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*
   799 F.2d 867 (2d Cir. 1986) ............................................................. 9-10

*Markel v. Scovill Mfg. Co.*
   471 F. Supp. 1244 (W.D.N.Y.), *aff'd*, 610 F.2d 807 (2d Cir. 1979) .................... 18

*Microsoft Corp. v. Atek 3000 Computer Inc.*
   No. 06 CV 6403, 2008 WL 2884761 (E.D.N.Y. July 23, 2008) ............................ 4

*Nat'l Distillers & Chem. Corp. v. Seyopp Corp.*
   17 N.Y.2d 12, N.E.2d 361 (1966) ......................................................... 18

*Omega S.A. v. Omega Eng'g, Inc.*
   228 F. Supp. 2d 112 (D. Conn. 2002) ............................................... 4, 13

*People for Ethical Treatment of Animals v. Doughney*
   263 F.3d 359 (4th Cir. 2001) ............................................................. 13

*Perpall v. Pavetek Corp.*
   No. 12-CV-0336 (PKC), 2017 WL 1155764 (E.D.N.Y. Mar. 27, 2017) ..................... 9

*Redmond v. Teledyne Landis Mach.*
   No. 515-CV-00646 (MAD/ATB) 2017 WL 2465173, (N.D.N.Y. June 7, 2017) ................ 9

*Renaissance Search Partners v. Renaissance Ltd. LLC*
   No. 12CV5638 DLC, 2014 WL 4928945 (S.D.N.Y. Oct. 1, 2014) ......................... 15

*Salonclick LLC v. SuperEgo Mgmt. LLC*
   No. 16 CIV. 2555 (KMW), 2017 WL 239379 (S.D.N.Y. Jan. 18, 2017) ................... 17

*Scottish Air Int'l, Inc. v. British Caledonian*
   81 F.3d 1224 (2d Cir. 1996) ............................................................. 13

*SCS Commc'ns, Inc. v. Herrick Co., Inc.*
   360 F.3d 329 (2d Cir. 2004) ............................................................. 13

*Sevex N. Am., Inc. v. Ragland*
    No. 1:06-CV-2005-RWS, 2007 WL 9702302 (N.D. Ga. Mar. 16, 2007) ........................... 15

*Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*
    202 F.3d 489 (2d Cir. 2000) ........................................................................ 10, 11

*Terry v. Ashcroft*
    336 F.3d 128 (2d Cir. 2003) .............................................................................. 9

*Third Educ. Grp., Inc. v. Phelps*
    675 F. Supp. 2d 916 (E.D. Wis. 2009) ............................................................. 15

*Thyroff v. Nationwide Mut. Ins. Co.*
    460 F.3d 400 (2d Cir. 2006) ........................................................................... 17

*Triboro Quilt Mfg. Corp. v. Luve LLC*
    No. 10 CV 3604 VB, 2014 WL 1508606 (S.D.N.Y. Mar. 18, 2014) ................................. 17

*Tuckett v. Slade Indus., Inc.*
    No. 1:16-CV-4081-GHW, 2018 WL 3910821 (S.D.N.Y. Aug. 14, 2018) ........................... 8

*Virtual Works, Inc. v. Volkswagen of Am., Inc.*
    238 F.3d 264 (4th Cir. 2001) ...................................................................... 10-11

**STATUTES**

15 U.S.C. § 1125(d)(1)(B)(i). ...................................................................... 10

N.J.S.A. 42:2C-11d(3) ................................................................................ 15

Plaintiffs American Lecithin Company, Lipoid GmbH, Lipoid LLC, and Phospholipid GmbH (collectively, "Plaintiffs") submit the following memorandum of law in opposition to the Motion for Summary Judgment Dismissing Plaintiffs' Amended Complaint (the "Motion") of Defendant and Third-Party Plaintiff Carsten Matthias Rebmann ("Defendant").

## Preliminary Statement

Defendant's Motion is deeply flawed. Many of his claims of undisputed facts are facially inconsistent with the deposition testimony he cites (and often inaccurately describes), including his own, and much of his motion rests on documents that only his attorney has attempted to authenticate, which falls far short of the required evidence. In addition, while he correctly states that the required element for the cybersquatting claim of a bad faith intent to profit has a specific meaning in this context, he avoids the detailed statutory and case law standards defining that term which defeat his argument that the element is lacking in this case. He also makes the astounding argument that transferring corporate intellectual property from the Plaintiff companies to his own name is neither a breach of fiduciary duty nor conversion, an argument that is specious. And his description of how much customer information was in the software data with which he left on his computer is, quite simply, wrong. That data included a history of both communications with and purchases by the customers, information that was proprietary and competitively sensitive. The motion should be denied.

## Factual Background

The Court has in four previous decisions already dealt at length with many of the facts in this case. (Docs. 140, 141, 243 & 249.) The Court's findings from the most recent of those decisions include in relevant part (citations by the Court omitted):

Plaintiffs are four corporate entities, and Third-Party Defendant[] [is an individual. . . . Plaintiff ALC is a Delaware corporation with its principal place of business in Connecticut. Plaintiff Lipoid LLC is a New Jersey limited liability company with its principal place of business in New Jersey. Plaintiffs Lipoid GmbH and Phospholipid GmbH are German limited liability companies with principal places of business in Germany. . . . Each of these corporations are members of a consortium of related entities known collectively as the "Lipoid Group."

In or about 1978, Dr. Rebmann began a business organized as Lipoid KG to manufacture, sell, and distribute lecithin and phospholipid products for use in the pharmaceutical, cosmetic, and dietetic industries. . . .

At Dr. Rebmann's request, Defendant on or about March 12, 2004, filed Certificate of Formation for Lipoid LLC in New Jersey. In or about late 2005, Dr. Rebmann offered Defendant the opportunity to assume full management responsibility of the Lipoid Group's U.S. operations. In 2007, Defendant engineered the acquisition of ALC by the Lipoid Group and became its President and CEO. Defendant's duties at ALC were the same duties he had with respect to Lipoid LLC.

. . . In August 2011, Dr. Rebmann terminated Defendant's employment with Lipoid LLC and ALC "for cause," because Defendant purportedly was "unwilling[] to work with the parent company and others within our group."

Since having his employment terminated, Defendant has attempted to establish his own business selling lecithin and phospholipid products.

Doc. 249 at 3-5.


## Procedural History

As the Court described in its most recent decision (*id*. at 6):

Plaintiffs filed this lawsuit on February 6, 2012. (Doc. 1.) On February 13, 2014, Defendant filed the Amended Answer, Counterclaims and Third-Party Claims, with Jury Demand ("First Amended Answer" or "FAA"). (Doc. 82.) On December 12, 2014, [the Court] granted in part and denied in part Plaintiffs' motion to dismiss the First Amended Answer, without prejudice to Defendant seeking leave to amend. (Doc. 141). On May 15, 2015, Defendant sought leave to file the Second Amended Answer. (Doc. 156-1.) By Stipulation and Order, entered May 18, 2015, (Doc. 157), the parties agreed, pursuant to Fed. R. Civ. P. 15(a)(2), to the filing of the SAA.

The Second Amended Answer assert[ed] twelve claims: six are counterclaims and third-party claims, and six are third-party claims only.

In that latest decision, the Court dismissed all the Third-Party Defendants except for Dr. Rebmann and all but two and part of a third of Defendant's twelve counter-/third-party claims. Dr. Rebmann has moved for summary judgment on one of those claims against him, for conversion, a motion filed and being briefed simultaneously with Defendant's current motion.

Defendant here moves for summary judgment on all the Amended Complaint's five claims against him: (1) for cybersquatting; (2) for breach of fiduciary duty as to Domain Names (as defined in the Amended Complaint); (3) for conversion as to Domain Names; (4) for breach of fiduciary duty as to CRM software and a laptop; and (5) for conversion as to CRM software and a laptop.

## Facts Relevant to Defendant's Motion for Summary Judgment

The parties agree[1] that (a) Defendant caused the formation of Plaintiff Lipoid LLC, in 2004, (b) at some point not long after that became functionally its CEO, and (c) after the Lipoid Group acquired Plaintiff American Lecithin Co. in 2007 he also became its President and CEO until he was terminated by both companies in August 2011 (Am. Compl./Doc. 12 ¶ 10; 2d Am. Ans./Doc. 187 ¶ 10; Goldman Ex. 3 at 19:7-24:24).

The domain name dispute begins with a set of trademarks owned by Plaintiffs. They have alleged the registration of those marks as follows (Am. Compl. ¶ 9):

---

[1] Plaintiffs here rely, as does Defendant, on the four depositions attached as exhibits to the Moving Affirmation of Defendant's counsel, the depositions of Third-Party Defendant Dr. Herbert Rebmann (Goldman Ex. 2), of Defendant (Goldman Ex. 3), of Dr. Bruce Baretz, CEO of Plaintiff Lipoid LLC (Goldman Ex. 5), and of Randall E. Zigmont, President of Plaintiff American Lecithin Co. (Goldman Ex. 12). Plaintiffs also rely on the pleadings, two affidavits of Defendant previously filed in this action, one sworn to October 18, 2013 (Docs. 74 & 78), and another sworn to October 9, 2015 (Doc. 206), and Defendant's Answers to Plaintiffs' First Set of Interrogatories, dated May 21, 2012, attached as Exhibit A to the accompanying affidavit of Gregory F. Hauser.

| Trademark | Registrant | Reg. Date and Number |
|-----------|------------|----------------------|
| Alcolec | Am. Lecithin Co. | Oct. 2, 2007; 3301136 |
| American Lecithin | Am. Lecithin Co. | Dec. 2, 2009; 3756437 |
| Cerasome | Lipoid LLC | June 8, 2010; 3798278 |
| Lipoid | Lipoid GmbH | Sept. 11, 2007; 3289399 |
| Nanosolve | Lipoid GmbH | May 19, 2009; 3621434 |
| Phosal | Phospholipid GmbH | Sept. 7, 2004; 2880858 |
| Phospholipon | Phospholipid GmbH | Nov. 16, 2004; 2902741 |
| Phytosolve | Lipoid GmbH | Jan. 31, 2006; 3055674 |

(See also Hauser Aff. Exs. B-I.[2])

Defendant has denied sufficient knowledge or information to admit or deny whether these facts are true (2d Am. Ans. ¶ 9), but he testified at his deposition that he is familiar with the terms as trademarks, indeed that he initiated the trademark registrations for Cerasome, Nanosolve and Phytosolve, and that he was aware that it was one of the Plaintiffs that owned the marks.  (Goldman Ex. 3 at 44:9-50:5.)

As for the Domain Names, Mr. Zigmont testified that he acquired alcolec.com and AmericanLecithin.com originally for American Lecithin Company and also was the one who originally registered phosal.com and phospholipon.com.  (Ex. 12 at 32:24-33:10 & 42:17-43:22.) Defendant has testified that he was responsible for registering the Domain Names cerasome.com, nanosolve.com, phosal.com, phospholipon.com and phytosolve.com in his personal name, that he transferred the domain name lipoid.com from Lipoid GmbH to his own name, and also

---

[2] These registrations are admissible pursuant to Fed. R. Evid. 201(b)(2).  *See, e.g., Omega S.A. v. Omega Eng'g, Inc*., 228 F. Supp. 2d 112, 120 (D. Conn. 2002) ("[P]laintiff's copies of trademark registrations are admissible evidence under Fed. R. Evid. 201(b)(2) as a 'judicially noticed fact' . . . ."); *Microsoft Corp. v. Atek 3000 Computer Inc*., No. 06 CV 6403, 2008 WL 2884761, at *2 n.2 (E.D.N.Y. July 23, 2008) ("The Court has taken judicial notice of the fact that the subject trademarks and service marks remain valid and registered with the United States Patent & Trademark Office."); *see also Island Software and Computer Serv., Inc. v. Microsoft Corp*., 413 F.3d 257, 261 (2d Cir. 2005) (taking judicial notice of Microsoft's copyright registrations on summary judgment, even though Microsoft did not swear to their authenticity).

transferred alcolec.com and americanlecithin.com from American Lecithin Co. to his own name.

(Goldman Ex. 3 at 50:6-70:18; see also Def. Rule 56.1 Statement ¶¶ 3-3[3].)

In his Answers to Plaintiff's First Set of Interrogatories (Hauser Aff. Ex. A), Defendant

stated in response to Interrogatory No. 2:

> <u>ANSWER:</u> OBJECTION. Defendant objects to this Interrogatory as beyond the scope of what is permissible pursuant to Local Civil Rule 33.3 and seeking information that Plaintiff can obtain more practicably through other means. Subject to and without waiving his objection, Defendant responds:
> alcolec.com: Upon information and belief, the domain has been registered since September 30, 2003 and was transferred to my account in May or June 2008.
> americanlecithin.com: Upon information and belief, the domain has been registered since January 2000 and was transferred to my account in May or June 2008.
> cerasome.com: I do not recall the specific date. Upon information and belief, the domain has been registered since May 4, 2011.
> lipoidllc.com: I do not recall the specific date. Upon information and belief, the domain has been registered since March 2004, and was transferred to my account in 2007 or 2008.
> nanosolve.com: I do not recall the specific date. Upon information and belief, the domain has been registered since January 4, 2004.
> phosal.com: Upon information and belief, the domain has been registered since September 30, 2003 and was transferred to my account in May or June 2008.
> phospholipon.com: Upon information and belief, the domain has been registered since September 30, 2003 and was transferred to my account in May or June 2008.
> phytosolve.com: I do not recall the specific date. Upon information and belief, the domain has been registered since May 4, 2011.
> phospholipids.net: I do not recall the specific date, but it was registered in my name at least as early as August 25, 2007. Upon information and belief, the domain has been registered since February 4, 2004.
> cochleates.com: Upon information and belief, I registered this domain on September 7, 2006.

The parties are thus in agreement that Plaintiffs own a set of trademarks that are

incorporated in a set of Domain Names that Defendant either initially registered in his name or

transferred from one of the Plaintiffs to his name. Beyond this, Plaintiffs dispute many of what

---

[3] Defendant's Rule 56.1 Statement has two paragraphs numbered 3.

Defendant claims to be undisputed facts.  To a large extent, Plaintiffs rely on Defendant's own deposition testimony.  He claims in this motion that his father was aware of his registration of the Domain Names in Defendant's personal name (Def. Rule 56.1 St. ¶ 5), but at his deposition Defendant testified that he did not know whether his father was aware (Goldman Ex. 3 at 67:11-20).  Defendant also claims that he has paid all the expenses for the Domain Names since they were registered in his name without being repaid by any of the companies and has offered to return them if he was paid those expenses.  (Def. Rule 56.1 St. ¶¶ 4, 7 & 15; see also Goldman Ex. 3 at 111:2-112:5.)  Plaintiffs dispute that any such offer was made and dispute that the evidence Defendant proffers on this point supports his claim.  Furthermore, at his deposition, he testified that could have reimbursed himself and he doesn't know if he ever sought reimbursement, and that he was holding the Domain Names until there was an agreement on all open issues, in other words, not just for reimbursement of domain name expenses.  (Goldman Ex. 3 at 72:17-73:6, 112:7-114:9 & 139:14-143:8.)

The facts relevant to his intent are also disputed.  He claims that he acquired them purely for business purposes and only to protect the companies.  (Def. Rule 56.1 St. ¶¶ 3-4 & 23.)  At his deposition, however, he admitted that he has at least once referred to them as "my domain names", that he was aware he was in control of the Domain Names and retained control after he was terminated, and that he could transfer them to anyone he wanted.  (Goldman Ex. 3 at 100:7-102:3, 103:18-105:9 & 114:20-115:21.)  Dr. Baretz's view is that Defendant's intentional retention of the Domain Names after termination could only have been deliberate, was a use of the companies' trademarks, and was both wrongful and improper.  (Goldman Ex. 5 at 49:8-50:6, 87:15-88:2, 92:12-93:4 & 94:7-95:17.)

6

After he was terminated, he admits that he received a demand to return the Domain Names to the companies that owned the trademarks incorporated in those names and that he made a decision not to do so.  (Goldman Ex. 3 at 109:10-110:19 & 120:20-22.)  He also admits in his affidavits that he then proceeded to enter into direct competition with the Lipoid Group (Doc. 74  & 78 at ¶ 56; Doc 206 at ¶ 52), as the Court has found, *see supra* at 2.  (See also Goldman Ex. 12 at 97:15-100:8.)

The parties also dispute whether Plaintiffs suffered harm from Defendant's retention of the Domain Names.  After he was terminated, his control of the Domain Names meant that the two American plaintiffs no longer received certain emails sent by customers or prospective customers and received complaints from some of them about the lack of response.  (Goldman Ex. 5 at 80:13-83:24: Ex. 12 at 52:25-55:10, 57:9-16.)  In addition, the Plaintiffs had to set up new domains, new websites and new e-mail addresses and inform their customers.  (Goldman Ex. 5 at 81:15-25, 83:11-21, 91:11-22; Ex. 12 at 34:11-25, 40:3-9, 49:12-50:9.)  Defendant did not respond to efforts by Mr. Zigmont to ask for redirection to Plaintiffs of the e-mails Defendant was receiving from Plaintiffs' customers and other contacts.  (Goldman Ex. 12 at 40:13-41:12.)  Defendant admitted at his deposition that he was receiving emails from Plaintiffs' customers and that he stopped forwarding them.  (Goldman Ex. 3 at 130:14-132:9.)

The parties dispute the nature of Plaintiffs' CRM (Customer Relationship Management) software retained and used by Defendant when he was terminated.  He claims that he bought both a laptop and the software.  (Def. Rule 56.1 St. ¶¶ 30 & 33.)  Plaintiff's dispute that he bought the software, which was company property.  (The unauthenticated evidence he submitted, Goldman Ex. 22, shows only that he purchased the laptop, not the CRM software.)  Indeed,

Defendant testified at his deposition that one of the companies purchased the software. (Goldman Ex. 3 at 81:11-22.)

Defendant claims that the software was only a contact list and contained no proprietary information. (Def. Rule 56.1 St. ¶ 35.) Plaintiffs have testified that it also contained records of customer visits, email communications with customers, and records of their purchases, which they considered the "lifeblood" of the company and trade secrets.[4] (Goldman Ex. 5 at 82:5-83:10, 101:18-103:2 & 109:22-111:11; Ex. 12 at 59:18-61:2.) Plaintiffs were also well aware that Defendant was indeed contacting their customers and attempting to divert business to his benefit and Plaintiffs' detriment. (Goldman Ex. 5 at 86:16-87:4 & 139:20-142:8; Ex. 12 at 69:20-70:8, 71:20-72:2, 74:11-11.)

## **Argument**

Summary judgment is warranted only when there is no issue of material fact and when, based upon facts not in dispute, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant bears the burden of demonstrating "the absence of a genuine issue of material fact." *Tuckett v. Slade Indus., Inc.*, No. 1:16-CV-4081-GHW, 2018 WL 3910821, at *3 (S.D.N.Y. Aug. 14, 2018). A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the court is "required to resolve all

---

[4] Defendant disputes whether the information constituted trade secrets, which is thus an issue of fact, but the premise of the claims against him is that the collected information was the property of the two American plaintiffs, which Defendant has not disputed.

ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

Defendant falls far short of satisfying this rigorous standard because there are a multitude of genuine issues of material fact. *See, e.g.,* Plaintiffs' Response to Defendant's Rule 56.1 Statement ("Plaintiffs' Rule 56.1 Response") and *supra*. Moreover, as set forth in Plaintiffs' Rule 56.1 Response, Defendant impermissibly attempts to establish undisputed facts by citations to certain documents that have either not been authenticated at all or have only been authenticated by Defendant's attorney, who does not possess the requisite personal knowledge regarding the cited documents. *See* Plaintiffs' Rule 56.1 Response ¶¶ 1, 2, 5, 7-9, 14, 15, 16, 27, 31, and 40. Defendant's failure to properly authenticate these documents renders them inadmissible for purposes of summary judgment. *See Redmond v. Teledyne Landis Mach.*, No. 515-CV-00646 (MAD/ATB), 2017 WL 2465173, at *9 (N.D.N.Y. June 7, 2017) (holding that attorney without personal knowledge of a document cannot authenticate that document for summary judgment purposes); *Perpall v. Pavetek Corp.*, No. 12-CV-0336 (PKC), 2017 WL 1155764, at *9 (E.D.N.Y. Mar. 27, 2017) (same).

## I.   Summary Judgment Dismissing Plaintiffs' Cybersquatting Claim Should Be Denied.

To prevail on a claim under the ACPA, a plaintiff must prove that: "(1) its marks were distinctive at the time the domain name was registered; (2) the infringing domain names complained of are identical to or confusingly similar to plaintiff's mark; and (3) the infringer has a bad faith intent to profit from that mark." *Webadviso v Bank of Am. Corp.*, 448 Fed Appx 95, 97 (2d Cir 2011). There can be no serious dispute that the Domain Names are distinctive under the law considering that they are all URL versions of registered trademarks, *see supra* at 3-4,  or the legal corporate names of three of the Plaintiffs. *See Lois Sportswear, U.S.A., Inc. v. Levi*

*Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986) ("registered trademarks are presumed to be distinctive and should be afforded the utmost protection"); *Alpha Recycling, Inc. v. Crosby*, No. 14-CV-5015 (JPO), 2016 WL 1178774, at *3 (S.D.N.Y. Mar. 23, 2016) ("As a rule, a registered trademark is presumed to be distinctive.").  And there is no doubt here that Defendant's Domain Names are in fact identical to Plaintiffs' marks.

Plaintiffs have established a triable issue of fact regarding Defendant's bad faith intent to profit from his ownership of the Domain Names.  The ACPA lists nine factors courts ***may*** consider in determining whether a person has acted in bad faith.[5]  However, as the Court of Appeals has explained, "we are not limited to considering just the listed factors when making our determination of whether the statutory criterion has been met. The factors are, instead, expressly described as indicia that 'may' be considered along with other facts."  *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 498 (2d Cir. 2000); *see also Virtual Works, Inc. v.*

---

[5]    These nine factors are: (I) the trademark or other intellectual property rights of the person, if any, in the domain name; (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct; (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct; (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection(c). 15 U.S.C. § 1125(d)(1)(B)(i).

*Volkswagen of Am., Inc.*, 238 F.3d 264, 269 (4th Cir. 2001) ("We need not, however, march through the nine factors because the ACPA itself notes that use of the listed criteria is permissive."). As the court explained in *Dudley v. HealthSource Chiropractic, Inc.*, "the Second Circuit emphasized in *Sporty's Farm* that the most important ground for holding bad faith intent, was the unique circumstances presented in that case, which did not fit neatly into the specific factors outlined by Congress, but may nevertheless be considered under the statute." 585 F. Supp. 2d 433, 441 (W.D.N.Y 2008); *accord  Gioconda Law Grp. PLLC v. Kenzie,* 941 F. Supp. 2d 424, 433 (S.D.N.Y. 2013) ("[A] number of courts—including the Second Circuit—have departed from strict adherence to the statutory indicia and relied expressly on a more case-specific approach to bad faith.").

In *Sporty's Farm*, for example, the court held that while Defendant's conduct did not fit neatly into the nine categories articulated above, there were ample grounds to conclude that Defendants were engaged in a bad faith scheme to profit by misappropriating Plaintiffs' domain name.  *See* 202 F.3d at 499.  In sum, the Court's role is "to determine how close a defendant's conduct falls to the ACPA's heartland—the clearest example of which is the situation where a defendant registers an established entity's domain name in bad faith and offers to sell it to the entity for an exorbitant price."  *Gench v. HostGator.com LLC*, No. 14 CIV. 3592 RA GWG, 2015 WL 569154, at *7 (S.D.N.Y. Feb. 11, 2015) (internal citation omitted); *accord Gioconda Law Grp.*, 941 F. Supp. 2d at 434 (holding that a quintessential example of bad faith is "where a defendant intends to profit by diverting customers from the website of the trademark owner to the defendant's own website, where those customers would purchase the defendant's products or services") (internal quotation marks omitted).

In this case, Defendant's behavior fits well within the scope the statute gives to bad faith. Looking at the statutory factors, there is no contest that Plaintiffs own the trademarks incorporated in most of the Domain Names at issue and that the others include the legal names of three of the Plaintiffs.  Plaintiffs have previously used both lipoid.com and americanlecithin.com for the bona fide offering of goods and more than one of the other marks as names for products offered through those domains.  Defendant has admitted that customer communications to the Plaintiffs followed the domains when he departed with them and that he later made a decision not to forward those communications back to Plaintiffs Lipoid LLC and ALC, diverting customers from the mark owners and clearly posing a threat to good will, as subsequent complaints from customers evidenced, and all this at a time when he was entering into direct competition with Plaintiffs.  Defendant has also admitted that he was not using the Domain Names but holding them as leverage in his settlement negotiations with the American Plaintiffs, *i.e.,* for financial gain.

Defendant's position that he was not engaged in a bad faith scheme to profit by controlling the Domain Names must be rejected.   Courts take a broad view of "profit" under the ACPA and do not require specific commercial activity.  *See Hamptons Locations v. Rubens,* 640 F. Supp. 2d 208, 221 (E.D.N.Y. 2009) ("[T]he prevailing view is that the ACPA does not require a plaintiff to demonstrate defendant's use in commerce.").  Indeed, several other forms of improper conduct have been held to constitute a bad faith intent to profit, including the type of extortionate demands Defendant has made in this lawsuit.  *See Gioconda Law Grp.*, 941 F. Supp. 2d at 434 (stating that "an extortionate demand" can establish bad faith intent to profit under the ACPA); *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 786 (8th Cir. 2004) (finding offer to stop using Washington Post domain names in exchange for space on the editorial page was evidence of bad

faith intent to profit, noting that "[p]rofit includes an attempt to procure an advantageous gain or return"); *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 368 (4th Cir. 2001) (defendant's suggestion that mark owner "make him a [settlement] offer" instead of suing him regarding the domain name in question satisfied the intent to profit requirement). At a minimum, whether Defendant acted in bad faith is an issue for a jury to decide. *See Omega S.A. v. Omega Eng'g, Inc.*, 228 F. Supp. 2d 112, 131 (D. Conn. 2002) (denying cross motions for summary judgment and holding that "both parties' motions must be denied with respect to the issue of defendants' bad faith intent to profit under the ACPA and the determination properly left to a jury, mindful that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial").

Accordingly, Defendant's motion for summary judgment for dismissal of Plaintiffs' ACPA claim must be denied.

## II.   Summary Judgment Dismissing Plaintiffs' Breach of Fiduciary Duties Claims Relating To The Domain Names Should Be Denied.

A claim for breach of fiduciary duty involves three elements: "breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages." *SCS Commc'ns, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 342 (2d Cir. 2004). The factual record establishes that Defendant was a fiduciary of both Lipoid LLC and the American Lecithin Company when he registered the Domain Names in his personal name.

New York courts decide questions relating to corporate internal affairs "in accordance with the law of the place of incorporation," *Scottish Air Int'l, Inc. v. British Caledonian*, 81 F.3d 1224, 1234 (2d Cir. 1996) (citation omitted). Under the law of both New Jersey (where Lipoid LLC was formed) and Delaware (where American Lecithin Company is incorporated), corporate

officers, like Defendant, owe their corporation a duty of care, a duty of loyalty, and a duty to act in good faith in connection with carrying out their duties on behalf of the corporation.  *See KDW Restructuring & Liquidation Servs. LLC v. Greenfield*, 874 F. Supp. 2d 213, 221 (S.D.N.Y. 2012) ("A Delaware corporation owes a 'triad' of fiduciary duties to its shareholders and the corporation, composed of the duty of care, the duty of loyalty, and the duty to act in good faith. Corporate directors and officers have identical fiduciary duties."); *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 761 (D.N.J. 2013) ("In New Jersey, corporate officers . . . owe a fiduciary duty of loyalty to the corporate entity which they represent. The duty of loyalty requires corporate directors to act in the best interests of the corporation, rather than for their own benefit, and requires an undivided and unselfish loyalty to the corporation [and] demands that there shall be no conflict between duty and self-interest.").

Defendant knowingly breached his duties of loyalty and care related to intellectual property assets of American Lecithin Company and Lipoid LLC by registering their Domain Names in his own name and then using them for his own personal benefit as a bargaining chip in connection with this litigation.  Defendant claims that no such duty was violated because he allegedly offered to return the Domain Names in exchange for reimbursement of his "personal expenses."   Motion at 14.  Yet, Defendant provides no explanation, nor can he, as to why he incurred costs related to the Domain Names in his personal capacity in the first place, given that he was employed by and serving as CEO of both American Lecithin Company and Lipoid LLC when he incurred such costs and could have sought reimbursement at any time.  In fact, he testified at his deposition that he wasn't sure whether he had sought reimbursement.  The only

explanation is that he was acting in his own self-interest at the expense of American Lecithin Company and Lipoid LLC in breach of his fiduciary duties.[6]

Indeed, Defendant's conduct is analogous to situations where courts have held a fiduciary duty has been violated.  For example, in *Third Educ. Grp., Inc. v. Phelps*, a corporate officer who took personal control over the corporation's domain name was held to have breached his fiduciary duty, with the court explaining that "[a] corporate officer taking an asset of the corporation and using it for his own purposes is perhaps the epitome of a breach of a fiduciary duty . . . . By taking control of the domain names and precluding members of the corporation from accessing it was akin to a corporate officer changing the locks and barring the doors to the corporate offices."  675 F. Supp. 2d 916, 926 (E.D. Wis. 2009).  Similarly, in *Sevex N. Am., Inc. v. Ragland*, plaintiff who claimed a defendant fiduciary who registered domain names in his own name in an effort to complete with plaintiff in the future raised triable issues of fact that survived a motion to dismiss.  *Sevex N. Am., Inc. v. Ragland*, No. 1:06-CV-2005-RWS, 2007 WL 9702302, at *5 (N.D. Ga. Mar. 16, 2007).

Defendant's argument that Plaintiffs have suffered no damages must also be rejected. *See supra* at 6-7.  Courts have acknowledged the presence of damages under similar circumstances.  *See Renaissance Search Partners v. Renaissance Ltd. LLC*, No. 12CV5638 DLC, 2014 WL 4928945, at *6 (S.D.N.Y. Oct. 1, 2014) (awarding compensatory and punitive damages where defendant fiduciary misappropriated website for his own personal use resulting in harm to

---

[6] Defendant relies on an exculpatory clause in the Operating Agreement of Lipoid LLC, relieving the Manager of a fiduciary duty to the company.  The clause falls far short of supporting summary judgment for three reasons.  First, it has no bearing on his fiduciary duty to American Lecithin Company.  Second, it applies only to the Manager, and he has not established what his tenure as Manager was.  Third, while New Jersey law allows such a clause, it cannot be used to authorize either intentional misconduct or knowing violation of law, N.J.S.A. 42:2C-11d(3), both of which Defendant's conduct here constitutes.

plaintiff's customer relationships).  Moreover, discovery is not yet complete, and there is no telling what additional damages Plaintiffs will uncover prior to trial.  *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2018 WL 1638096, at *1 (S.D.N.Y. Apr. 3, 2018) (holding that motion for summary judgment was premature while discovery on damages issues was still open).

As a final point as to fiduciary duty, Defendant's argument that his fiduciary duties ended when he was terminated is as flawed as almost all of his arguments.  Courts in this District have expressly acknowledged that an employee's fiduciary duties to his employer may continue after the termination of the employment relationship.  *See, e.g., Am. Fed. Grp., Ltd. v. Rotherberg*, 91 CIV. 7860(THK), 2003 WL 22349673, at *13 (S.D.N.Y. Oct. 14, 2003) ("[A]n employee's fiduciary duty may continue after termination of the employment relationship.  Such a continuing duty may . . . include the specific duty not to divert business in which a former employer has the requisite tangible expectancy, and the duty not to exploit to the former employer's detriment specific information obtained during the employment that was either technically confidential or that was available to the fiduciary only because of the employment.");  *Chefs Diet Acquisition Corp. v. Lean Chefs, LLC,* 14-CV-8467 (JMF), 2016 WL 5416498, at *8 (S.D.N.Y. Sept. 28, 2016) (explaining that "courts have found a violation of fiduciary duties where former employees . . . used their former employer's proprietary secrets to build a competing business.");  *see also Abraham Zion Corp. v. Lebow*, 593 F. Supp. 551, 569 (S.D.N.Y. 1984) (explaining that a former employee who had no written contract prohibiting the disclosure of his employer's confidential information nonetheless "has a fiduciary duty that exists independent of any contract between the parties to refrain from such conduct.").

As set forth above, Plaintiffs are well-positioned to argue—and prove—at trial that Defendant violated his fiduciary duties to American Lecithin Company and Lipoid LLC and that they have sustained damages.  Therefore, summary judgment dismissing Plaintiffs' breach of fiduciary duty claim related to the Domain Names must be denied.

### III.   Summary Judgment Dismissing Plaintiffs' Claim for Conversion of Domain Names Should Be Denied.

Contrary to Defendant's argument, courts in this District have expressly recognized that domain names and other electronic information may be the subject of a conversion claim.  *See Salonclick LLC v. SuperEgo Mgmt. LLC*, No. 16 CIV. 2555 (KMW), 2017 WL 239379, at *4 (S.D.N.Y. Jan. 18, 2017) ("The Court holds that Plaintiff has stated a claim for conversion of its domain name . . . under New York law."); *Ardis Health, LLC v. Nankivell*, No. 11 CIV. 5013 NRB, 2011 WL 4965172, at *3 (S.D.N.Y. Oct. 19, 2011) ("It is uncontested that plaintiffs own the rights to [website access information].  Defendant's unauthorized retention of the information may therefore form the basis of a claim of conversion."); *Triboro Quilt Mfg. Corp. v. Luve LLC*, No. 10 CV 3604 VB, 2014 WL 1508606, at *9 (S.D.N.Y. Mar. 18, 2014) (holding that a claim for conversion is viable where the "rightful owner of intangible property is prevented from creating or enjoying a legally recognizable and protectable property interest in his idea such as by being prevented from registering the domain name for a website or being denied access to a database he created").  None of the cases cited by Defendant actually deal with a claim of conversion of a domain name, and they are irrelevant.

Under New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006) (recognizing electronic data is subject to a claim for conversion).  Here, Defendant has admitted that he took the several

Domain Names originally registered by Mr. Zigmont for American Lecithin Company as well as lipoidllc.com and transferred them to his own name. *See supra* at 4-5. That was conversion.

**IV.** **Summary Judgment Dismissing Plaintiffs' Breach of Fiduciary Duties And Conversion Claims Relating To the CRM Software And Laptop Should Be Denied.**

As can be seen *supra* at 7, the material facts concerning Plaintiffs' claims with regard to the CRM software, including whether he purchased it, whether his father knew of any such purchase, and to what information the software gave him access, are in definite dispute. Furthermore, as shown *supra* at 16, his argument that his fiduciary duties ended with his employment is wrong. Summary judgment as to the two claims relating to the CRM software must therefore also be denied.

**V.** **The Doctrines Of Unclean Hands And Laches Do Not Bar Plaintiffs' Claims.**

Defendant's argument that he is entitled to summary judgment on his affirmative defense of unclean hands is disposed of easily. To prevail on an unclean hands defense, the moving party "must prove that (1) the offending party is guilty of immoral, unconscionable conduct; (2) the conduct was relied upon by the asserting party and (3) the asserting party was injured as a result." *Residential Capital, LLC*, No. 15-CV-5423 (AJN), 2016 WL 1192690, at *6 (S.D.N.Y. Mar. 22, 2016) (internal citations omitted). Unclean hands "is never used unless the plaintiff is guilty of immoral, unconscionable conduct and even then only when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct." *Nat'l Distillers & Chem. Corp. v. Seyopp Corp.*, 17 N.Y.2d 12, 15–16, 214 N.E.2d 361, 362 (1966); *accord Markel v. Scovill Mfg. Co.*, 471 F. Supp. 1244, 1255 (W.D.N.Y.), *aff'd*, 610 F.2d 807 (2d Cir. 1979) ("[C]ourts are reluctant to apply the unclean hands doctrine in all but the most egregious situations.").

Here, Defendant's unclean hands defense is based almost entirely on Plaintiffs requesting that Defendant return the Domain Names without complying with a request for a ransom payment characterized as "personal expenses."  No reasonable fact finder could conclude that such conduct is in any way immoral or unconscionable, and Defendant has suffered no harm as a result of Plaintiffs' request, other than needlessly engaging in litigation instead of simply returning the Domain Names to Defendants.  Indeed, Defendant's defense fails since his own position has not been consistent.  At his deposition, he testified both that he was not sure whether he had sought reimbursement for the domain name expenses and that he was holding them not just for those expenses but as part of a settlement of all issues.

Defendant's laches affirmative defense is equally flawed.  It fails because such defense may generally only be relied upon to defeat a preliminary injunction, not a permanent injunction as Plaintiffs are seeking here.  *See Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) ("Although a particular period of delay may not rise to the level of laches and thereby bar a permanent injunction, it may still indicate an absence of the kind of irreparable harm required to support a preliminary injunction.").  While Plaintiffs have suffered and continue to suffer irreparable harm as a result of Defendant's theft of the Domain Names, because they have decided not to seek a preliminary injunction, there can be no argument that laches bars their claims.  Indeed, they timely filed this lawsuit in April 2012, immediately after Defendant refused to return the Domain Names as Plaintiffs requested in multiple letters and emails.  *See* Goldman Affidavit Exs. 14-16.  They have been diligently litigating this matter ever since.

## Conclusion

For all the foregoing reasons and those stated in Plaintiffs' Rule 56.1 response, Defendant's Motion for Summary Judgment should be denied in its entirety.

Dated:  March 29, 2019
       New York, NY

Respectfully submitted,

_____
Gregory F. Hauser
WUERSCH & GERING LLP
100 Wall Street, 10th Floor
New York, New York 10005
Tel: (212) 509-5050
Fax: (212) 509-9559
*Attorneys for Plaintiffs and for*
*Third-Party Defendant Herbert*
*Rebmann*

To:    Samuel Goldman, Esq.
       Samuel Goldman & Associates
       200 Park Avenue, Suite 1700
       New York, NY 10017
       Tel: (212) 725-1400
       Fax: (212) 725-0805
       *Attorneys for Defendant and Third-Party Plaintiff*

## CERTIFICATE OF SERVICE

I am an attorney at Wuersch & Gering LLP, counsel for Plaintiffs and Third-Party Defendants, in the above-captioned proceeding.  I hereby certify that on March 29, 2019, I caused the foregoing to be served electronically via the United States District Court, Southern District of New York Court's ECF system upon those parties entitled to receive electronic notice.


_____
Gregory F. Hauser