| | |
|---|---|
| AMERICAN LECITHIN COMPANY, LIPOID GmbH, LIPOID, LLC, and PHOSPHOLIPID GmbH, <br><br>       Plaintiffs, <br><br>-v- <br><br>CARSTEN MATTHIAS REBMANN, <br><br>       Defendant and <br>       Third-Party Plaintiff, <br><br>-v- <br><br>HERBERT REBMANN, LIPOID STIFTUNG, LIPOID BETEILIGUNGS GmbH, LIPOID VERWALTUNGS AG, LIPOID GRUNDSTUECKS GmbH, and PHOSPHOLIPID FORSCHUNGSZENTRUM e.V., <br><br>       Third-Party Defendants. | Case No. 12-cv-00929-VSB <br><br>**Document Electronically Filed** |

**MEMORANDUM OF LAW IN OPPOSITION TO THIRD-PARTY DEFENDANT HERBERT REBMANN'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Carsten Matthias Rebmann submits this Memorandum of Law in opposition to the motion for partial summary judgment of Third-Party Defendant Herbert Rebmann [Dkt. 271].

### INTRODUCTION AND BACKGROUND FACTS

This case began as a legally and factually baseless effort by Herbert Rebmann, the German founder of the Lipoid Group of companies, to use the United States courts, as a vehicle to punish his son, Matthias, for various perceived slights. As demonstrated in Matthias' pending motion for summary judgment in this action [see Dkts. 275, 281 and 282], Herbert fired Matthias as CEO of the two American Plaintiffs, Lipoid LLC and American Lecithin Company and then

used them and two European members of the Lipoid Group to sue Matthias, based on patently false allegations and flawed legal theories.

Plaintiffs took Matthias' deposition on July 19, 2012, but Herbert then refused to permit his own deposition to be taken despite months of efforts to schedule it [*see* Dkts. 25-2, 25-3, 25-4, 33, 34, 44]. On September 21, 2012, the Court (R. Abrams, J.) ordered Herbert to submit to a deposition forthwith [Dkt. 34]. Herbert did not comply. In a letter filed on December 4, 2012, Matthias moved for sanctions [Dkt. 44]. Herbert still did not comply, and in an effort to avoid having his deposition taken, at a conference before Magistrate Kevin Nathanial Fox on December 18, 2012, offered to dismiss the case *without* prejudice [Dkt. 46]. This offer was just a ploy, as Herbert was simultaneously taking matters into his own hands.

On December 18, 2012, the same day that Herbert's counsel was in Court offering to withdraw the case without prejudice, Herbert noticed a shareholders' meeting for Lipoid Grundstuecks, to be held on December 25, 2012 at 9 AM at his home in Neustadt, Germany, for the purpose of taking Matthias' 10% interest in that company from him [Exhibit A to Dkt. 74].

This was just part of Herbert's ongoing pattern of harassment and efforts to bleed Matthias dry financially. Herbert's assault on his son included a January 1, 2013 letter in which Herbert demanded repayment of $490,000 on a loan from Lipoid Verwaltungs AG, a company that had never lent Matthias any money [Exhibit B to Dkt. 74], the brazen taking of Matthias' inheritance from his mother and Herbert's first wife, and more recently, the commencement of another baseless lawsuit against Matthias, this time in the New York State Supreme Court, seeking to collect on a "mortgage debt" that was already at issue in this case.

The Lipoid Grundstuecks shareholders meeting was apparently rescheduled for January 9, 2013 and held on that date [Exhibit B to Dkt. 74]. Herbert rejected all of Matthias' requests

2

for procedural and substantive protections, including for copies of the corporate by-laws which governed the proceeding, and to be given an opportunity to speak at the shareholders' meeting.

Apparently, the only shareholders in attendance at the meeting were Herbert and his second wife, and according to Herbert, they voted to take Matthias' shares. Herbert sent Matthias a notice of this taking, entitled "Neiderschrift", dated January 25, 2013, in which he articulated the purported reasons the shares were taken, including [Exhibit D to Dkt. 74]:

> Mr. Carsten Rebmann has registered internet domains on his own account and has blocked all electronic correspondence that uses these domains after his termination as CEO. Employees of Lipoid Group have no longer access to their former e-mail accounts and to the personal and business-related e-mails that reach these accounts. He diverts the user of the homepage of ALC to a homepage that is accessible to him only and claim on top of this that this was the only official homepage of the company. Thereby, he certainly damages the company directly. Additionally, Mr. Carsten Rebmann uses this internet domain actively for commercial purposes. Customers and business partners are confused and don't reach their desired partners.

None of this had anything to do with Lipoid Grundstuecks, whose only business was owning real property in Germany. Further, the reason given by Herbert for taking Matthias' shares were patently untrue and they mimicked precisely the baseless charges leveled against Matthias in the complaint in this action. Herbert had decided to do an end-run around this Court's jurisdiction over these issues and "adjudicate" them himself. In this manner, he hoped to avoid having his deposition taken in this lawsuit and having this Court determine that his clams were baseless.

Matthias had no choice but to bring third-party claims against Herbert for, among other things, conversion of his 10% interest in Lipoid Grundstuecks.

Herbert avoided having his deposition taken for three years. He finally submitted on April 29, 2015 in Frankfurt, Germany, only after disobeying numerous Court orders and being severely sanctioned by the Court [Dkt. 155]. This deposition was limited to jurisdictional issues and Herbert's claims against Matthias, and did not include Matthias' claims against Herbert and the

3

other Lipoid Group parties.

Herbert has now moved for summary judgment dismissing this claim on the grounds that Herbert never exercised "unauthorized dominion" over the shares; it was Lipoid Grundstuecks that did that.

Herbert's motion should be denied because it is based on an erroneous assertion of the elements of the tort of conversion. The essence of the tort of conversion is interference with another's possessory rights and there can be no doubt that Herbert interfered with Matthias' right of possession over those shares. It should also be denied because Hebert has resisted all efforts at discovery on this issue and discovery is necessary to determine the claims against him.

## ARGUMENT

Herbert's motion is based on a faulty and overly narrow reading of the requirements for liability under the tort of "conversion." He asserts that he was not guilty of conversion because he did not "exercise dominion or assume any right of ownership of the shares;" and that it was Lipoid Grundstuecks that did that because "technically" the shares were taken by a resolution of Lipoid Grundstuecks [see the Memorandum of Law of Herbert Rebmann, Dkt. 271 at 5].

Herbert's argument is misguided. "A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession. Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property **or interference with it**, in derogation of plaintiff's rights." *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50 (2006) (emphasis supplied, citations omitted).

That Matthias owned the 10% share interest in Lipoid Grundstuecks is not disputed [Dkt. 273 ¶ 4]. Neither is the fact that Herbert caused a shareholders' meeting of Lipoid Grundstueks

4

to be held on January 9, 2013, at which he caused shareholders' resolution to be adopted taking Matthias' shares [Exhibit D to Dkt. 74].

The fact that the shares went into the possession of Lipoid Grundstueck is not a defense to the claim of conversion against Herbert. There can be no doubt that Herbert interfered with Matthias' right of ownership and possession. "Interference with the right to possession is the essence of a conversion. It is not necessary that one take actual physical possession of property to be guilty of conversion. Any wrongful exercise of dominion by one other than the owner is a conversion." *General Electric Co. v American Export Isbrandtsen Lines, Inc.*, 37 AD2d 959, 959 (2d Dept 1971) (internal citation omitted). Similarly in , *Hillcrest Homes, LLC v. Albion Mobile Homes, Inc.*, 117 A.D.3d 1434, 1436 (4th Dept 2014), the Fourth Department explicitly rejected the contention that conversion required taking possession or ownership of the property in question. "We conclude, however, that plaintiff's allegation that defendants interfered with plaintiff's right to possess the property is sufficient to state a cause of action for conversion, which, contrary to the court's analysis, does not require an allegation, much less a showing, that defendants took ownership of the property or benefitted therefrom." *Id.* (citing *Colavito*).

Herbert's motion erroneously suggests that if Lipoid Grundstuecks took Matthias' shares, Herbert could not also be guilty of taking them. "Officers and agents of corporations are personally liable for their own acts which bring about a conversion of a third party's property, and it is no defense to personal liability that the officer or agent may have been acting on behalf of a corporate principal." *Ingram v. Machel & Jr. Auto Repair*, 538 N.Y.S.2d 539, 541 (1st Dep't 1989) (citing *Hinkle Iron Co. v Kohn*, 229 NY 179 (1920); *Prudential-Bache Secs., Inc. v. Golden Larch-Sequoia, Inc.*, 500 N.Y.S.2d 1 (1st Dep't 1986)); *see also Jami Marketing Servs., Inc. v. Howard*, No. 86-cv-3352, 1988 WL 46106 (E.D.N.Y. Apr. 26, 1988).

5

In *PDK Labs, Inc. v. G.M.G. Trans W. Corp.*, 101 A.D.3d 970, 973-974 (2d Dept 2012), the Second Department explained: "A corporate officer may be liable for torts committed by or for the benefit of the corporation if the officer participated in their commission" Accordingly, "[a]n individual, even though acting for a corporation of which he is an officer, may be held liable for conversion" (citations and internal quotation marks omitted). In *LoPresti v. Terwilliger*, 126 F.3d 34, 41-42 (2d Cir. 1997), a corporate officer was held liable for conversion for causing the corporation to take union dues and use them to pay creditors, even though the officer hadn't assumed any right of ownership of the funds and the corporation had. As in *PDK Labs* and *LoPresti*, Herbert can be held liable since he participated in the conversion even though he did not assume ownership of Matthias' shares.

\* \* \*

Herbert's motion should be denied for another reason. Herbert has so far refused to provide Matthias with the underlying documentation relating to the "shareholders' meeting" in question. These include the corporate by-laws and other documents showing that the procedures followed were legally proper.

Herbert has also refused to be deposed on the issue of the taking of Matthias' shares. Under German law the shares can only be taken for "just cause" and for "fair value." Matthias has a right to depose Herbert on these issues, as well.

6

## CONCLUSION

For the foregoing reasons, Herbert's motion for summary judgement should be denied.

Dated: March 29, 2019
    New York, New York

                                                  SAMUEL GOLDMAN & ASSOCIATES

                                                 By: _____
                                                 Samuel Goldman
                                                 200 Park Avenue, Suite 1700
                                                 New York NY, 10166
                                                 Tel. (212) 725-1400
                                                 Fax. (212) 725-0805
                                                 Email: sg@sgalaw.com
                                                 *Attorneys for Defendant and Third-Party Plaintiff*

## CERTIFICATE OF SERVICE

I, Samuel Goldman, am an attorney at Samuel Goldman & Associates and am counsel for the Defendant and Third-Party Plaintiff, in the above-captioned proceeding. I hereby certify that on March 29, 2019, I caused the foregoing **Memorandum of Law in Opposition to Third-Party Defendant Herbert Rebmann's Motion for Partial Summary Judgment** to be served electronically via the United States District Court, Southern District of New York Court's ECF system upon those parties entitled to receive electronic notice.

_____
Samuel Goldman