UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN LECITHIN COMPANY, LIPOID GmbH, LIPOID, LLC, and PHOSPHOLIPID GmbH, <br><br>                                  Plaintiffs, <br><br> -v- <br><br> CARSTEN MATTHIAS REBMANN, <br><br>                                  Defendant and <br>                                  Third-Party Plaintiff, <br><br> -v- <br><br> HERBERT REBMANN, LIPOID STIFTUNG, LIPOID BETEILIGUNGS GmbH, LIPOID VERWALTUNGS AG, LIPOID GRUNDSTUECKS GmbH, and PHOSPHOLIPID FORSCHUNGSZENTRUM e.V., <br><br>                                  Third-Party Defendants. | Case No. 12-cv-00929-VSB <br><br> **Document Electronically Filed** |

# REPLY MEMORANDUM OF LAW OF DEFENDANT AND THIRD-PARTY PLAINTIFF CARSTEN MATTHIAS REBMANN ON HIS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

| | Page |
|---|---|
| Table of Authorities............................................................................................ | ii-iii |
| Introduction........................................................................................................ | 1-2 |
| ARGUMENT....................................................................................................... | 2 |
|     A. Summary Judgment Dismissing Plaintiffs' Cybersquatting Claim Should be Granted............................................................................... | 2-8 |
|     B. Summary Judgment Dismissing Plaintiffs' Breach of Fiduciary Duty Claim relating to the Domain Names Should be Granted............................. | 8-12 |
|     C. Summary Judgment Dismissing Plaintiffs' Conversion Claim relating to the Domain Names Should be Granted........................................ | 12-13 |
|     D. Summary Judgment Dismissing Plaintiffs' Claims Relating to the CRM Software Should be Granted............................................................ | 13 |
|     E. Summary Judgment Dismissing Plaintiffs' Claims Relating to the CRM Software Should be Granted............................................................ | 14 |

# TABLE OF AUTHORITIES

**Cases**                                        **Page**

*Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, 2015 U.S. Dist. LEXIS 120871, (C.D. Cal.) .................................................................................................... 4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................. 2,3

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................. 2,3

*Christy v. Cambron*, 710 F.2d 669 (10th Cir. 1983) ...................................................... 9

*Comm. Data Servers, Inc. v. IBM*, 262 F.Supp.2d 50 (S.D.N.Y. 2003) ......................... 1

*E.E.O.C. v. Recruit U.S.A., Inc.*, 939 F.2d 746 (9th Cir. 1991) ................................... 14

*ForeWord Magazine, Inc. v. OverDrive, Inc.*, 2011 U.S. Dist. LEXIS 125373 (WD Mich Oct. 31, 2011) ............................................................................................................ 1

*Gordon v. Kaleida Health*, 299 F.R.D. 380 (W.D.N.Y. 2014) ...................................... 1

*In re Gen. Motors LLC Ignition Switch Litig.*, 2018 WL 1638096 (S.D.N.Y. Apr. 3, 2018) ....... 12

*Johnson v. Gumer*, 94 A.D.2d 955, 464 N.Y.S.2d 318 (4th Dep't 1983) .................... 12

*Lisbin v. Cohen*, 1 A.D.2d 697, 147 N.Y.S.2d 648 (2d Dep't 1955) ......................... 8, 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ..................... 2

*Mayflower Transit, LLC v. Prince*, 314 F. Supp. 2d 362 (D.N.J. 2004) ....................... 4

*New World Solutions, Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287 (SDNY 2015) ..... 7

*People of Ethical Treatment of Animals v. Doughney* 263 F.3d 359, 368 (4th Cir. 2001) ....... 4

*Petroliam Nasional Berhad v. GoDaddy.com, Inc. (Petroliam Nasional II)*, 737 F.3d 546, (9th Cir. 2013) ............................................................................................................... 4

*Pro-Concepts, LLC v. Resh*, 2013 U.S. Dist. LEXIS 151714, (U.S.D.C. E.D. Va.) ...... 3

*Renaissance Search Partners v. Renaissance Ltd. LLC*, No. 12CV5638 DLC, 2014 WL 4928945 (S.D.N.Y. Oct. 1, 2014) .................................................................................................. 12

*Salonclick LLC v. SuperEgo Mgmt. LLC*, 2017 WL 239379 (S.D.N.Y. Jan. 18, 2017) ............... 13

*Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53 (2d Cir. 1993) ............................................. 12

*Sevex N. Am., Inc. v. Ragland*, 2007 WL 9702302 (N.D. Ga. Mar. 16, 2007) ............................ 10

*Slate v. Byrd*, 2013 U.S. Dist. LEXIS 35983, 2013 WL 1103275 (M.D.N.C. 2013) ..................... 1

*Third Educ. Grp., Inc. v. Phelps*, 675 F. Supp. 2d 916 (E.D. Wis. 2009) ...................................... 9

*Virtual Works, Inc. v Volkswagen of Am., Inc.*, 238 F3d 264 (4th Cir 2001) ................................ 4

*Wang v Societe Du Figaro S.A.*, 2018 US Dist LEXIS 13119 (S.D.N.Y Jan. 26, 2018, No. 15-CV-9376 (PAE) (JLC) ............................................................................................................... 5

**Statutes**

Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ............................................. 2

Rule 56(c)(2) ................................................................................................................................... 1

**Other Authorities**

H.R. Conf. Rep. No. 106-464, at 111 (1999) ................................................................................. 4

## INTRODUCTION

Plaintiffs fail, in their memorandum of law in opposition ("PMOL"), to show evidentiary facts sufficient to prove the legal elements of their claims and thus to defeat summary judgment. Instead, they continue to make allegations of wrongdoing by Defendant Carsten Matthias Rebmann ("Matthias") without any factual support and they urge the Court to ignore facts set forth in the documentary evidence produced by Matthias – correspondence and emails to which they or their attorneys are parties - on the grounds that this evidence is unauthenticated. Plaintiffs are wrong in their assertion that this documentary evidence cannot be considered by the Court,[1] and their denial of facts set forth in black and white in correspondence in which they and their attorneys participated demonstrates the frivolousness of their case. Accordingly, Matthias' summary judgment motion should be granted and sanctions assessed against Plaintiffs.

---

[1] Plaintiffs' blanket statement that the documents submitted by Matthias are unauthenticated and therefore cannot be considered [PMOL at 8] is erroneous on its face. It is contrary to Rule 56(c)(2), which was added to Rule 56 in 2010 and provides:
> (2) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

Since this amendment, an objection to the admissibility of documents based merely on the fact that they are unauthenticated is improper. As the statute now provides, an objection must be based on the contention that the document cannot be presented in a form that would be admissible in evidence. *See ForeWord Magazine, Inc. v. OverDrive, Inc.*, 2011 U.S. Dist. LEXIS 125373, *3-4 (WD Mich Oct. 31, 2011). See also *Gordon v. Kaleida Health*, 299 F.R.D. 380 (W.D.N.Y. 2014) ("[The] Rule simply provides that the evidence must be capable of presentation in admissible form at the time of trial; it does not require that the materials be presented in an admissible form on summary judgment."). Plaintiffs do not contend that any of the documents submitted by Matthias cannot be presented in admissible form, and thus they all should be admitted. *See Slate v. Byrd*, 2013 U.S. Dist. LEXIS 35983, 2013 WL 1103275 (M.D.N.C. 2013) ("Because [defendant] has not filed an objection contending that the cited material 'cannot be presented in a form that would be admissible in evidence,' no basis exists for the Court to decline consideration of the material at issue."). Indeed, it is difficult to conceive how Plaintiffs could have made such a claim, since these documents consist exclusively of deposition transcripts and communication between the parties or their attorneys. Undoubtedly, they can be presented in admissible form. Further, the documents in question were authored by Plaintiffs or their counsel, or received by them from Matthias or his counsel. Even before the 2010 Amendments, courts frowned upon and warned that "[i]t is disingenuous and wasteful" to object to one's own documents based upon personal knowledge or authentication. *Id.* (*Comm. Data Servers, Inc. v. IBM*, 262 F.Supp.2d 50, 60 (S.D.N.Y. 2003)).

1

Summary judgment should be granted for another reason – one of equity. What Plaintiffs call "the domain name dispute" [PMOL at 3] is not a dispute over domain names at all. It is about Herbert Rebmann's ("Herbert") efforts to use this Court's good offices to punish his son with meritless accusation and to reject Matthias' multiple efforts to turn over the domain names, initially with reimbursement of Matthias related expenses and later without. It is an effort to use this Court to order the return of domain names which Matthias never sought to keep, reimbursement of Matthias' expenses in maintaining them for Plaintiffs' benefit. Such a result would be grossly inequitable and should be rejected under the doctrine of unclean hands.

## ARGUMENT

### A. Summary Judgment Dismissing Plaintiffs' Cybersquatting Claim Should be Granted

Matthias' motion relating to the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), claim rests on his showing that there is no evidence sufficient to find that he had a "bad faith intent to profit" as required for liability under the ACPA. Plaintiffs' burden, in response, is to "direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Plaintiffs "may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A "mere scintilla" of evidence is not enough to defeat summary judgment, *Anderson* at 252; "if the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson* at 250 (citations omitted).

2

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

Plaintiffs fail to meet their burden to present a sufficient evidentiary basis on which a reasonable jury could find that Matthias had a "bad faith intention to profit" by registering, using or trafficking in, the domain names at issue. It is not Matthias' burden to prove that he did not. Plaintiffs offer no evidence that Matthias was not authorized to register the domain names in his account. They offer no evidence that, during the 12 or 13 years since Matthias registered the first of these domain names, he used them for anything other than Lipoid Group purposes. They offer no evidence that Matthias trafficked in the domain names, although they do contend that Matthias' efforts to obtain reimbursement of his expenses or to settle the many issues between him and his father on an omnibus basis constituted "bad faith intent to profit" These contentions are legally and factually insufficient.

Seeking reimbursement for expenses of registering and maintaining a website is not an "intent to profit" and therefore not a violation of the ACPA. *Pro-Concepts, LLC v. Resh*, 2013 U.S. Dist. LEXIS 151714, *3-4 (U.S.D.C. E.D. Va.) ("there is evidence that Resh did so, not for financial gain, but for reimbursement. The evidence, as presented to the Court, indicates that Resh attempted to transfer the site to the markholder for an amount equal to the cost of acquiring and maintaining the domain."). This is precisely what Matthias did in our case.

3

A "mere offer to sell a domain name is not itself evidence" of bad faith intent in the absence of evidence of the offer being exorbitant, i.e., not simply for reimbursement. *Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, 2015 U.S. Dist. LEXIS 120871, *135 (C.D. Cal.) (citing *Virtual Works, Inc. v Volkswagen of Am., Inc.*, 238 F3d 264, at 270 (4th Cir 2001) (which cites H.R. Conf. Rep. No. 106-464, at 111 (1999)). Moreover, the ACPA's bad faith limitation requires that a plaintiff prove the defendant acted with "*subjective bad faith....*" (*emphasis supplied*). *Petroliam Nasional Berhad v. GoDaddy.com, Inc.* ("*Petroliam Nasional II*"), 737 F.3d 546, 553-54 (9th Cir. 2013).

> The ACPA's congressional record consistently signals the drafters' intention to target a narrow class of cyber-squatters consisting of those who have the bad faith intent to profit, and not to tread on the rights of those with any other motives. H.R. Rep. 106-412, 10; S. Rep. 106-40, 13; Ford *Motor Co.*, 177 F. Supp. 2d at 642 (the "ACPA was designed to target persons who commandeer a domain name for no reason other than to profit by extortion, yet bypass persons with legitimate interests in the domain name.").

*Mayflower Transit, LLC v. Prince*, 314 F. Supp. 2d 362, 370 (D.N.J. 2004). Whatever facts Plaintiffs allege or produce, there are none that suggest that Matthias commandeered the domain names to profit by extortion.

*People of Ethical Treatment of Animals v. Doughney* 263 F.3d 359, 368 (4th Cir. 2001), cited by Plaintiffs, is not applicable to our case. In that case, the court found a bad faith intent to profit based on multiple factors, including that (a) Doughney used the PETA Mark in a commercial manner; (b) Doughney "clearly intended to confuse, mislead and divert internet users into accessing his web site which contained information antithetical and therefore harmful to the goodwill represented by the PETA Mark"; (c) Doughney made statements on his web site and in the press recommending that PETA attempt to "settle" with him and "make him an offer"; (d) Doughney made false statements when registering the domain name; and (e) Doughney registered other domain names that are identical or similar to the marks or names of other famous people and

4

organizations." All were present in the *Doughney*, but none are present in our case. Notably, Mathias never asked Plaintiffs to make him an offer for the domain names or ask to profit from them.

Further, Plaintiffs' "ACPA nine factors" analysis [see PMOL at 10, 12] is deeply flawed. Matthias does not contest Plaintiffs' ownership of the marks, which is what (I) through (II) relate to. But none of the indicia of "bad faith intent to profit are present. There is no evidence that Matthias (IV) used the mark in a website for his benefit (V) attempted to divert consumers from the mark owner's online location to a site accessible under the domain name (VI) offered to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain: moreover, Matthias had used the marks for Plaintiffs benefit and there was no prior conduct indicating a pattern of such conduct; (VII) provided false contact information or failed to maintain accurate contact information; there is no prior conduct indicating a pattern of such conduct; (VIII) registered multiple domain names without regard to the goods or services of the parties. And, these are non-exclusive factors and probably not relevant to a situation like ours where the defendant wants to turn over the marks, and the plaintiffs refuse to accept them. *See Wang v Societe Du Figaro S.A.*, 2018 US Dist LEXIS 13119, *29-30 (S.D.N.Y Jan. 26, 2018, No. 15-CV-9376 (PAE) (JLC)).

Not only are Plaintiffs' many statements that they dispute Matthias' evidence insufficient to defeat summary judgment; many of these statements fly in the face of documentary evidence produce by Matthias, and even in the face of their record cites. For example, Plaintiffs state that they dispute that an offer was made by Matthias to return the domain names upon the reimbursement of his expenses in maintaining them. But this is directly contradicted by the letter sent by Matthias' counsel to Herbert's and Plaintiffs' counsel on June 15, 2012 making that offer

5

[Ex. 17[2]] and by the latter's response to the offer in an email dated June 18, 2012 [Ex. 18]. They simply urge the Court to ignore these pieces of correspondence on the grounds that they were not authenticated. These documents are capable of being authenticated for trial and they prove that the offer was made received. Thus; Plaintiffs denial is not credible.

Similar, Plaintiffs' state that they dispute that Matthias paid the domain name expenses, even though they never disputed this when they received Matthias' counsel's email and the attached itemized list showing $10,453 in expenses. It is an account stated that was not questioned. It is thus conclusive. The Court can also take judicial notice that somebody had to be paying these expenses and if it was not Matthias, Plaintiffs should have been able to produce copies of their checks and receipts showing that they or another Lipoid Group member paid them. They didn't do this, and they cannot claim a genuine issue of fact exists over this issue.

Plaintiffs assert that Matthias was holding the domain names as a bargaining chip and cite to Matthias' deposition as supporting this fact. But this is a misrepresentation of Matthias' testimony. A review of the transcript (Ex. 3 111:2-112:5) shows that it was Plaintiffs' counsel who was questioning Matthias who said this and that Matthias refused to adopt his statement. Matthias, when given the chance, explained that he did not return the domain names in response to Mr. Hauser's November 7, 2011 email because "what was missing was the offer of reimbursement, because I paid for those things." [*see* Ex. 3 at 11:18 to 119:5]. He explained that there were many issues that needed to be settled between him and his father, and that if Herbert and Hauser wanted to separate the domain names from the other issues and settle this, they had to offer to reimburse his expenses [*Id.*]. In other words, the only thing holding up the assignment was Plaintiffs' and Herbert's refusal to reimburse Matthias' expenses.

---

[2] Unless stated otherwise, "Ex." refers to the Exhibits annexed to the Affirmation of Samuel Goldman dated March 1, 2019, submitted in support of this motion.

Further, even accepting Plaintiffs' contention that Matthias did not return the domain names because he wanted a global settlement with his dad, there is no evidence that Matthias was asking for an "exorbitant" amount or anything more than what he was reasonably entitled to in the settlement of all of his claims. The ACPA does not prohibit requests for reimbursement or requests for omnibus settlement amounts so long as they are not "unreasonable, exorbitant and extortionate" *See New World Solutions, Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 313 (SDNY 2015). After all, "a bad faith intent to profit" requires an intent to profit, and there is no evidence that Matthias sought to profit either in seeking expense reimbursement or in seeking a global settlement of his claims after he was terminated.

Plaintiffs grossly misrepresent Matthias' reference to "my domain names" and statement that he could sell them, as referring to the ones at issue in this litigation, when they clearly referred to phospholipids.net, one that Plaintiffs admit belonged to Matthias. The email in which he referred to "my domain names" clearly related only to "phospholipids.net" and Matthias explained this during his deposition [Ex. 3 at 103:14-105:9; 116:12-118:15]. The transcript shows that Plaintiffs were well aware of this, so to suggest that Matthias was talking about the domain names at issue is disingenuous. Matthias had registered "phospholipids.net" and "cochleates.com" and Plaintiffs make no claim to these belonged to them. Under questioning, Matthias acknowledged that using the plural was an error, but demonstrated that the reference was to phospholipids.net [Ex. 3 103:14-105:9].[3]

---

[3] Plaintiffs also misstate the documentary evidence by alleging that "Defendant did not respond to efforts by Mr. Zigmont to ask for redirection to Plaintiffs of the e-mails Defendant was receiving from Plaintiffs' customers and other contacts. (Ex. 12 at 40:13-41:12.)" [see PMOL at 7], when the cited testimony has nothing to do with this. In fact, Mr. Zigmont is talking about Matthias not changing the americanlecitthin.com website to redirect to the americanlecithin.us website, but otherwise acknowledging that the americanlecithin.com hadn't changed and still directed visitors to American Lecithin and that he was aware on no use by Matthias of the website for other than ALC business. [Ex. 3 at 41:6-42:7]. It is not a violation for an ex-employee to refuse to do

7

All in all, the evidence shows that what Matthias did, even giving Plaintiffs every reasonable inference, is so far removed from a violation of the ACPA, that Plaintiffs should never have been brought this case, and that doing so was frivolous.[4]

### B. Summary Judgment Dismissing Plaintiffs' Breach of Fiduciary Duty Claim relating to the Domain Names Should be Granted

For Plaintiffs to be able to prove their breach of fiduciary duties claim, they must show that Matthias breached his fiduciary duties to Plaintiffs and that they suffered damages as a result. They come up short in both regards.

This claim rests on the assertion that Matthias wrongfully registered the domain names in his own name and that he did this for his personal benefit [Ex. 1, ¶ 41]. It does not assert that he breached his fiduciary duties by failing to turn over the domain names when he was terminated constituted a conversion.

Plaintiffs produce no evidentiary facts showing that Matthias registered the names for any reason other than Plaintiffs' benefit. They produce no evidentiary facts to dispute the evidence that his father was aware of what he was doing and approved or at the very least, acquiesced in what Matthias was doing or that other employees of the Plaintiff companies assisted him with the transfers. Shareholders may, either by direct act or acquiescence, invest officers of the corporation with the power to appropriate corporate assets *to noncorporate purposes*, where rights of creditors and violations of law are not involved. *Lisbin v. Cohen*, 1 A.D.2d 697, 147 N.Y.S.2d 648 (2d Dep't 1955), order aff'd, 3 N.Y.2d 817 (1957) (emphasis supplied). *See also Christy v. Cambron*, 710

---

additional work for his ex-employer without compensation, and without reimbursement of his expenses.

[4] One additional point. As Plaintiffs point out, registered marks are presumed to be distinctive, but the testimony they cite shows that at least six of the marks were generic, rather than distinctive. [PMOL at 9-10]. This would also be a bar to an ACPA claim.

8

F.2d 669 (10th Cir. 1983) (applying Colorado law). In our case, the registrations were done *for corporate purposes*, and there is no evidence it was not authorized.

Only after Matthias was terminated, did Plaintiffs for the first time raise the contention that Matthias was not authorized to register the domain names in his own name. Not surprisingly, Plaintiffs produce no evidence that Matthias was not authorized or to refute Matthias' statements that this was standard practice in the Lipoid Group (*see* Ex. 3 at 64-65).

Plaintiffs misrepresent Matthias' testimony regarding his father's knowledge of the fact that he was registering the domain names. They state (PMOL at 6), that:

> [Matthias] claims in this motion that his father was aware of his registration of the Domain Names in Defendant's personal name (Def. Rule 56.1 St. ¶ 5), but at his deposition Defendant testified that he did not know whether his father was aware (Goldman Ex. 3 at 67:11-20).

In fact, what Matthias actually stated that his father was aware of what he was doing with the domain names, but perhaps not the specifics ("I don't know whether he knew the specifics. I know that he generally was aware of the way I did those things, yeah.") (*Id.*). Matthias continued on by giving an example of how he had let his father use the domain name phospholipids.net which he had registered for himself for the Phospholipids Research Center and for his personal email (Ex. 3 at 67:21-69:5). Notably, Herbert accepted these from Matthias and did not object to the fact that he had registered them while working for Lipoid LLC. In his testimony, Herbert explained that he thought that what Matthias was doing was proper until recently [Ex. 2 at 313:9-12]. He could not have said that if he didn't know what Matthias was doing.

*Third Educ. Grp., Inc. v. Phelps*, 675 F. Supp. 2d 916, 926 (E.D. Wis. 2009), cited by Plaintiffs, actually supports Matthias' position. The key factors in that case were that the corporate officer used the domain names "for his own purposes" and "precluded precluding members of the corporation from accessing it." In our case, there is no evidence that Matthias did either of these things, and the evidence is overwhelming that he did not. Similarly, *Sevex N. Am., Inc. v. Ragland*,

2007 WL 9702302, at *5 (N.D. Ga. Mar. 16, 2007), cited by Plaintiffs is inapplicable since there is no evidence that Matthias registered the domain names for the purpose of competing with Plaintiffs.

Plaintiffs contend that Matthias violated his post-employment fiduciary duties, but the cases they cite listing such duties [PMOL at 16] are far different from our case. Plaintiffs do not claim or produce any evidence that Matthias did any of the things that these cases state are considered violations of post-employment fiduciary duties. He did not "divert business in which a former employer has a tangible expectancy." exploit confidential information or use proprietary secrets to build a competing business, and he did not disclose confidential information to third parties. Further, Plaintiffs produced no authority that "post-employment fiduciary duties" require a terminated employee to do additional work without compensation, incur expenses without reimbursement or transfer property without reimbursement of his expenses in maintaining that property.

Further, post-employment fiduciary duties do not continue forever. The evidence shows that Matthias acted in Plaintiffs' best interests even after he was terminated. He did not alter the websites and email services, and he forwarded all emails he received to Plaintiffs and helped in transitioning clients to others at the companies [Ex. 5 at 80-81, Ex. 3 at 131-132]. He undertook to transfer the cellphone accounts which were in his name and he delivered boxes of documents to Lipoid LLC. [Ex. 3 at 139-141].

Even though Herbert had caused Plaintiffs to set up new emails accounts the same day he sent Matthias his letter of termination and Plaintiffs sent an email blast notifying clients of the change. (Ex. 12 at 51:23-52:5, Ex. 5 at 81:17-25), Matthias continued to forward emails to Plaintiffs and Herbert. At some point, after Plaintiffs and their customers had had enough time to convert to using the new email addresses, he stopped forwarding them. [Ex. 3 at 131-132]. He had

10

no obligation to continue doing this without compensation, and if the customers didn't use the new email addresses, this was not Matthias' fault.

Plaintiffs' fiduciary duty claim must also be dismissed because they show no facts indicating that they were harmed by Matthias' actions. Their efforts to manufacture facts showing harm are unsupported by the documents they cite. For example, they state [PMOL at 7]:

> After he was terminated, his control of the Domain Names meant that the two American plaintiffs no longer received certain emails sent by customers or prospective customers and received complaints from some of them about the lack of response. (Goldman Ex. 5 at 80:13-83:24: Ex. 12 at 52:25-55:10, 57:9-16.)

This is a gross distortion of the testimony. Bruce Baretz' precise words were:

> Over the years I've received e-mails either directly from Mr. Rebmann, Mr. Matthias Rebmann, or customers who said that they sent e-mails inquiring this or that, and either I was not responsive or they contacted Mr. Matthias Rebmann directly and he referred them to me. And on many occasions in the past I recall receiving these e-mails from Mr. Matthias Rebmann himself. (Goldman Ex. 5 at 80:18-81:1)

As Mr. Baretz explained, it was Matthias who forwarded emails and customer complaints to him.

When his deposition was taken almost 5 years after Matthias was terminated, Mr. Baretz couldn't come up with a single fact showing that Matthias had caused harm to Plaintiffs – that he had used the domain names for his own personal benefit (Ex. 5 at 84:8-12) or had not forwarded emails he had received (Ex. 5 at 83:11-18).

Randall Zigmont said that even in 2016, he was receiving complaints about not responding to emails addressed to him at americanlecithin.com. But, he admitted that he had never looked at his americanlecithin.com emails after Matthias had been let go (Ex. 12 at 52:25-54:4). So, the fault was his for not looking at his .com emails, or the clients for not using his new email address. It was not Matthias'.

Further, the case they cite on damages, (*Renaissance Search Partners v. Renaissance Ltd. LLC*, No. 12CV5638 DLC,2014 WL 4928945, at *6 (S.D.N.Y. Oct. 1, 2014)) is one where a

11

"defendant fiduciary misappropriated website for his own personal use" and completely inapposite here. *In re Gen. Motors LLC Ignition Switch Litig.*, 2018 WL 1638096, at *1 (S.D.N.Y. Apr. 3, 2018), is a multidistrict litigation with multiple complex issues over many jurisdictions relating to damages. Our case is a much simpler one where Plaintiffs have provided no evidentiary facts showing that there were any damages.

### C. Summary Judgment Dismissing Plaintiffs' Conversion Claim relating to the Domain Names Should be Granted

Plaintiffs' conversion claim rests on the allegation that Matthias wrongfully registered the domain names in his own name and they simply ignore the fact that he offered to turn them over and simply wanted reimbursement of the related expenses [Ex. 1 ¶ 47]. Further, Plaintiffs' complaint contains allegations that are inconsistent with this assertion. The complaint indicates that the registrations were authorized, but what was not was the "use of the Trademarks other than as an employee, officer and fiduciary of one or more of Plaintiffs." [Ex. 1 ¶ 26]. Plaintiffs produce no evidence that Matthias used the trademarks other than as an employee, officer or fiduciary of Plaintiffs. To the extent that Plaintiffs' own statement in ¶ 26 is not deemed a dispositive admission, it should be noted that they produce no evidence to dispute the evidence that such registrations were authorized.

When the defendant's "original possession [of the property] is lawful, a conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the property." *Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 54 (2d Cir. 1993) (quoting *Johnson v. Gumer*, 94 A.D.2d 955, 464 N.Y.S.2d 318, 319 (4th Dep't 1983). As

shown in Matthias' moving papers, a demand without payment of expense cannot be the basis of a conversion claim [DMOL at 15-16].[5]

Matthias could not have made these transfers without the corporations' consent, and as Matthias explained he made these transfers to his own account not to benefit or profit from them, but to improve the internet service to the companies [Ex. 5 at 37-38, Ex. 3 at 52-54, Ex. 6, Ex. 4]. There is ample evidence supporting this assertion in the record and none to the contrary.

Notably, Plaintiffs do not claim that Matthias' failure to turn over the domain names when he was terminated constituted a conversion.

### D. Summary Judgment Dismissing Plaintiffs' Claims Relating to the CRM Software Should be Granted

Plaintiffs are mistaken in suggesting that the software and data were not included in the sale to Matthias. The note in Lipoid LLC's files [Ex. 22] states that Matthias purchased "several notebooks (**including the data**)." (emphasis supplied). "Data" must include the software since it is useless without the software. Besides, Plaintiffs' complaint relates not to the software, but to the data, claiming that it contained proprietary information.

Plaintiffs also claim that the data contained trade secrets, but this claim is undermined by the fact that they did not sue Matthias for misappropriation of trade secrets or for using them in connection with opening his own lecithin and phospholipids business. Notably, Plaintiffs provide no evidence that Matthias ever used the information they considered trade secrets.

---

[5] Plaintiffs rely on a recent lower court decision, *Salonclick LLC v. SuperEgo Mgmt. LLC*, 2017 WL 239379, at *4 (S.D.N.Y. Jan. 18, 2017), for the proposition that domain names can be the subject of a conversion claim. This decision acknowledges that it is a departure from the existing rule in New York that conversion will only lie when tangible property is taken, and argues that the trend is in this direction. It is noteworthy that this "trend" has not yet been adopted by the New York Court of Appeals or the Second Circuit, but even if it represents the current state of the law, Plaintiffs' conversion claim must still fail.

13

### E. Summary Judgment Dismissing Plaintiffs' Claims Should be Granted based on Plaintiffs' Unclean Hands

"[The doctrine of 'unclean hands'] s a self-imposed ordinance that closes the doors of a court of equity to one tainted with an inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *E.E.O.C. v. Recruit U.S.A., Inc.*, 939 F.2d 746, 752 (9th Cir. 1991). Clearly, Plaintiffs and Herbert's refusal to reimburse Matthias for his expenses in maintaining their domain names was in bad faith and inequitable. In effect, Plaintiffs and Herbert came into Court to ask that this Court compel Matthias to turn over the domain names he had paid for without having to reimburse him for his expenses. This is precisely the type of unconscionable conduct that this Court should not condone.

Dated: April 5, 2019
       New York, New York

SAMUEL GOLDMAN & ASSOCIATES

By: _____
Samuel Goldman
200 Park Avenue, Suite 1700
New York NY, 10166
Tel. (212) 725-1400
Fax. (212) 725-0805
Email: sg@sgalaw.com
*Attorneys for Defendant and Third-Party Plaintiff*

**CERTIFICATE OF SERVICE**

I, Samuel Goldman, am an attorney at Samuel Goldman & Associates and am counsel for the Defendant and Third-Party Plaintiff, in the above-captioned proceeding. I hereby certify that on April 5, 2019, I caused the foregoing Reply Memorandum Law to be served electronically via the United States District Court, Southern District of New York Court's ECF system upon those parties entitled to receive electronic notice.

_____
Samuel Goldman