UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
AMERICAN LECITHIN CO., LIPOID GmbH,
LIPOID LLC, *and* PHOSPHOLIPID GmbH,

                Plaintiffs,

       -against-

CARSTEN MATTHIAS REBMANN,

                Defendant;
                Counterclaim and
                Third-Party Plaintiff,

       -against-

HERBERT REBMANN, LIPOID
GRUNDSTUECKS GmbH, LIPOID
VERWALTUNGS, GmbH, LIPOID AG, *and*
COMPLECTOR AG,

                Third-Party
                Defendants.
------------------------------------------------------------------X

**ORDER**

**12-cv-929 (VSB) (JW)**

**JENNIFER E. WILLIS, United States Magistrate Judge:**

This action has been pending for over a decade and was initially commenced on February 6, 2012. Dkt. No. 1. On February 13, 2014, the first answer with counterclaims was filed naming Third-Party Defendant Dr. Herbert Rebmann ("Dr. Rebmann") as a party to this action. Dkt. No. 82. The instant dispute regarding sanctions arises from the alleged failure to preserve, search, and provide emails from Dr. Rebmann's email account "dr.rebmann@lipoid.com" (the "Subject Email Account"). Dkt. No. 374.

On October 13, 2023, this Court issued an order for Plaintiffs and Third-Party Defendant (together, the "Lipoid Group") to show cause as to why the Court should not impose sanctions pursuant to its authority under Fed. R. Civ. P. 37(e) for spoliation and failure to preserve relevant information. Dkt. No. 380 ("OTSC"). In response to the OTSC, on October 18, 2023, the Lipoid Group submitted a memorandum of law asking that the Court impose no sanctions arguing that Dr. Rebmann took reasonable measures to preserve, Dkt. No. 386 ("OTSC Resp."), including a supporting declaration of Gregory F. Hauser, who is the Lipoid Group's current counsel, Dkt. No. 386, Ex. 1 ("Hauser Decl."); a declaration of Sherica Bryan, who was formerly employed by Plaintiff's counsel, Dkt. No. 386, Ex. 7 ("Bryan Decl."); a declaration from Andreas Zolodziej, who is a representative of Plaintiff Lipoid GmbH and Plaintiff Phospholipid GmbH, Dkt. No. 386, Ex. 8 ("Zolodziej Decl."); a declaration of Third-Party Defendant Dr. Herbert Rebmann, Dkt. No. 386, Ex. 9 ("Dr. Rebmann Decl."); and a declaration of Dr. Rebmann's wife, Birgit Rebmann, Dkt. No. 386, Ex. 10 ("B. Rebmann Decl.").

Defendant/Third-Party Plaintiff ("Matthias") requests that this Court impose an adverse inference sanction for spoliation. Dkt. No. 392 ("Req. for Sanctions"). In a prior letter prompting the OTSC, Matthias requested sanctions, "including but not limited to case ending sanctions, an award of attorneys' fees, or an adverse jury instruction." Dkt. No. 374. The Lipoid Group responded that Matthias had not met his burden of showing Dr. Rebmann acted with an intent to deprive Matthias of the information. Dkt. No. 403 ("Reply").

This Court, having heard the arguments on October 27, 2023, and reviewed the moving papers, is deeply troubled by the pattern and practice of dilatory discovery

2

tactics in this action.  For the reasons stated below, and more fully on the record, this Court GRANTED the request for an adverse inference jury instruction, and awarded Matthias the fees and costs associated with the sanctions briefing.

## BACKGROUND[1]

The operative amended complaint in this action was filed on April 10, 2012. Dkt. No. 12 (the "Am. Compl."). Plaintiffs are a collection of companies that specialize in the lipoid business.  Dkt. No. 340 at 3-4.  Matthias was previously an officer of Plaintiff American Leicithin Company and Plaintiff Lipoid, LLC.  Am. Compl. at ¶ 11.  Plaintiff Lipoid GmbH and Plaintiff Phospholipid GmbH are related companies organized under the laws of Germany.  Id. at ¶¶ 2,4.  Plaintiffs' lawsuit arises out of a claim that Matthias registered various company domains in his own name and/or transferred various domains to his own name. Id. at ¶¶ 11-28. Specifically, Plaintiffs assert claims against Matthias arising out of the Anticybersquatting Consumer Protection Act (the "ACPA"), 15 U.S.C. § 1125(d).  Am. Compl. at ¶ 6.  Plaintiffs also have surviving claims for breach of fiduciary duty and conversion.  Dkt. No. 400 at 3.

Matthias has counterclaims for (i) wrongful termination, alleging in part that his father Third-Party Defendant Dr. Rebmann orchestrated his termination because he would not file fraudulent tax returns and (ii) conversion against Dr. Rebmann for allegedly converting Matthias's 10% equity interest in non-party Lipoid Grundstuecks GmbH ("Lipoid G").  Dkt. No. 400 at 8.  The resolutions of Lipoid G indicated that Matthias's interests were taken away "for cause" in part because

---

[1] This Court presumes familiarity with the facts of the case and only recites those necessary to resolve the instant dispute over sanctions.

3

Matthias had "failed to file tax returns" on behalf of Plaintiff Lipoid, LLC and American Lecithin Company. Dkt. No. 293 at 5.

### A. The Subject Email Account and Relevant History

The Lipoid Group alleges that Dr. Rebmann began using the Subject Email Account after Matthias was terminated in August 2011. OTSC Resp. at 4. The domain associated with the Subject Email Account is controlled by Plaintiff Lipoid GmbH, another named party in this action. Id. The Lipoid Group further states that due to confidentiality concerns, emails from the Subject Email Account were stored on Dr. Rebmann's computer and not saved on the email server. Id. at 5. Dr. Rebmann alleges, "[i]n the time period of 2006-2012, [his] emails were never on the exchange server at Lipoid GmbH or Phospholipid GmbH, and were instead only on the laptop [he] was using, stored locally and not otherwise backed up." Dr. Rebmann Decl. at 2.

Counsel for the Lipoid Group attests that on March 21, 2012, counsel received a letter from Matthias's attorney's raising the duty to preserve evidence and forwarded the letter to Dr. Rebmann the same day. OTSC Resp. at 6. Plaintiffs' former counsel does not recall a specific conversation with Dr. Rebmann on preserving emails, but alleges that their standard practice was to have a conversation with clients about document preservation. Bryan Decl.

On February 20, 2014, Matthias sent his first request for production of documents to Dr. Rebmann, which included a direction to "**preserve all relevant and potentially relevant information**" (bold in the original text). Req. for Sanctions at 5. Dr. Rebmann was deposed on April 29, 2015, and he testified that he had relevant emails and documents on his personal computer. Id. at 4. On May 20, 2015, the Lipoid Group's counsel received a follow-up communication for documents

4

discussed at Dr. Rebmann's deposition, including "[a]ll documents relating to the tax returns that [Matthias] allegedly refused or failed to file." Id., Ex. C at 2. From July 3, 2014 to September 30, 2017, discovery on the counterclaims was stayed intermittently pending the Court's resolution of various motions to dismiss in this action. Reply at 3-4. During a hearing on sanctions on October 27, 2023, when asked whether Dr. Rebmann's email retention procedures changed at all in response to the litigation notice, counsel for the Lipoid Group responded that no change in retention practices occurred.[2]

Dr. Rebmann alleges he "had a series of laptops [since 2011]. One ha[d] been destroyed, another lost, and one damaged. As a result, only a limited number of [his] emails to and from [Matthias] during the relevant time period [had] been saved." Dkt. No. 377, Ex. 2 at 2. Dr. Rebmann claims he lost the first relevant laptop in 2016. Dr. Rebmann Decl. at 3.

On May 24, 2023, this Court heard oral argument regarding a discovery dispute and discussed relevant tax issues with the Parties. See Transcript at Dkt. No. 340. On May 24, 2023, this Court ordered Plaintiffs to "turn over any responsive documents in their possession related to the tax issues" discussed in the case. Dkt. No. 330 at 2. On August 25, 2023, the Court denied Matthias's request to compel certain communications, but directed Plaintiffs "to produce the relevant tax emails by September 1, 2023." Dkt. No. 350. After many disputes over tax communications and whether all documents had been produced, on October 2, 2023, this Court ordered the Lipoid Group to prepare an affidavit outlining their search protocols and endeavors to retrieve tax related email communications. Dkt. No. 369. The Order

---

[2] The Court notes that at the time of the filing of this order, the transcript of the October 27, 2023 hearing was not yet available.

for an affidavit prompted the discovery that the Subject Email Account had never been searched. Dkt. No. 374. The Lipoid Group's counsel, Matthias, and the Court were not aware of Dr. Rebmann's "lost" laptop until October 2023.

Trial in this matter is imminently scheduled for November 7, 2023, before District Judge Broderick. Dkt. No. 380.

## **LEGAL STANDARD**

A District Court has "broad discretion to determine an appropriate sanction for discovery violations based on the facts of the particular case." R.F.M.A.S., Inc. v. So., 271 F.R.D. 13, 24 (S.D.N.Y.2010) (citing Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 101 (2d Cir.2002)). "An appropriate sanction is one that will: (1) deter parties from violating discovery obligations; (2) place the risk of an erroneous judgment on the party that wrongfully created the risk; and (3) restore the prejudiced party to the same position that it would have been in absent the discovery violation by an opposing party." Id. (citing West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir.1999)).

"Spoliation is the . . . failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999). The Court may impose sanctions where electronically stored information (i) should have been preserved, (ii) is lost because a party failed to take reasonable steps to preserve it, and (iii) cannot be restored or replaced through additional discovery. See Fed. R. Civ. P. 37(e). Upon finding that a party acted with the intent to deprive another party, the Court may "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it

6

may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2).

When a party seeks a jury instruction of adverse inference for spoliation of electronically stored information, it must demonstrate: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 430 (S.D.N.Y. 2004). The party requesting an adverse inference, "bears the burden to show by clear and convincing evidence that the alleged spoliator acted with the intent to deprive the movant of the information for use in the litigation." Europe v. Equinox Holdings, Inc., 592 F. Supp. 3d 167, 175 (S.D.N.Y. 2022).

## DISCUSSION

### A. Spoliation Sanctions

Throughout my years of practice and relatively short tenure on the bench, I have not seen such an egregious case of spoliation. One month before trial, Dr. Rebmann raised for the first time that he lost the only laptop where certain emails were stored over seven years ago. Dr. Rebmann Decl. at 3. The threshold question with respect to spoliation is whether evidence has been lost. See La Belle v. Barclays Capital Inc., 340 F.R.D. 74, 82 (S.D.N.Y. Jan. 13, 2022)("[S]poliation sanctions can be imposed only when the party seeking such sanctions demonstrates that relevant evidence has been lost."). Here, the Lipoid Group concedes that, "[g]iven Dr.Rebmann's use of the POP3 email protocol . . . copies of the [Subject Email Account] emails stored only on the lost

7

laptop became inaccessible." OTSC Resp. at 5. Given that emails were clearly lost, the Court need only find that the duty to preserve existed, Matthias is prejudiced by the missing emails, and Dr. Rebmann acted with the intent to deprive Matthias of relevant information.

### 1. Duty to Preserve and Reasonable Steps to Preserve

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Fujitsu Limited v. Federal Express Corp., 247 F .3d 423, 436 (2d Cir. 2001). "To fulfill this preservation obligation, a litigant must take affirmative steps to prevent inadvertent spoliation." R.F.M.A.S., Inc. v. So, 271 F.R.D. 13, 24 (S.D.N.Y. 2010))

The 2012 complaint in this action accused Matthias of wrongfully converting internet domains. Dkt. No. 1 ¶ 11. Arguably at that time, the Subject Email Account that Dr. Rebmann created due to the allegedly converted email domains was at issue. Req. for Sanctions at 3. In 2014, Dr. Rebmann became a Party to this action. Dkt. No. 82. The most generous application of the duty to preserve is that it attached when that first answer with counterclaims was filed on February 13, 2014. Id. This duty to preserve was in place long before the laptop was "lost" in 2016.

The Lipoid Group concedes the duty to preserve existed when the laptop was lost, and instead argues that reasonable methods to preserve the emails were taken. OTSC Resp. at 9-10. Matthias counters that no efforts to search, preserve, or produce emails from the Subject Email Account were taken for over a decade. Req. for Sanctions at 2. This Court agrees that based on the record before it, no affirmative steps were taken to prevent spoliation.

"A party or anticipated party must retain all relevant documents . . . in existence at the time the duty to preserve attaches, and any relevant documents created thereafter." Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y. 2003). To this end, a party must "suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." Id. The Court has found "it is not sufficient to notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information." Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 432 (S.D.N.Y. 2004). Instead, "counsel should instruct all employees to produce electronic copies of their relevant active files. Counsel must also make sure that all backup media which the party is required to retain is identified and stored in a safe place." Id. at 434.

Here, counsel attests to forwarding a preservation email from Matthias's counsel to Dr. Rebmann, OTSC Resp. at 6, but prior counsel does not remember whether the duty to preserve was actually discussed with Dr. Rebmann, Bryan Decl. Additionally, during oral argument on October 27, 2023, the Lipoid Group's counsel conceded that no changes to document retention practices were made as a result of this litigation. Neither Dr. Rebmann, nor Plaintiff Lipoid GmbH who owned the email server, made any effort to shield the Subject Email Account from spoliation. This Court finds that no reasonable efforts to preserve were taken.

**2. Prejudice and Relevance**

According to Matthias, Dr. Rebmann's missing emails from the Subject Email Account are clearly relevant to Matthias's claims and he is prejudiced by the inability to examine them. Req. for. Sanctions. The Lipoid Group argues that Matthias has not met his burden of showing that missing emails would support his case. OTSC

9

Resp. at 11-12. On balance, the Court is persuaded that Matthias has met his burden of showing that the missing communications are relevant and there is significant prejudice to him from the missing communications.

"Relevance and prejudice may be presumed when the spoliating party acted in bad faith or in a grossly negligent manner." Ottoson v. SMBC Leasing and Fin., Inc., 268 F. Supp. 3d 570, 581 (S.D.N.Y. 2017) (quoting another source). "In the context of a motion for spoliation sanctions, 'relevance' means that 'the destroyed evidence would have been favorable to the movant.'" Id. at 580 (citations omitted).

Here, while the inaction of the Lipoid Group was certainly negligent, Matthias also offers decisive evidence of relevance and prejudice. During Dr. Rebmann's April 2015 deposition, he mentioned that he had relevant letters and communications with Matthias on his computer. Req. for Sanctions at 4. Additionally, Matthias has shown that tax communications with the Lipoid Group's outside accountant include emails that Dr. Rebmann has not produced from the Subject Email Account. Req. for Sanctions at 9-10. The Court previously determined the relevance of these tax related email communications in its prior order on May 24, 2023. Dkt. No. 330.

Further, with respect to prejudice, the Lipoid Group's argument that any email communications about Matthias would also be in Matthias's possession is not persuasive. Both the tax related email communications and other communications about Matthias's termination would not be in his possession. The Court is satisfied that the missing emails are relevant to Matthias's arguments and their absence is prejudicial to him.

### 3. Intent to Deprive

Matthias requests that this Court impose an adverse inference, one of the harshest penalties under Fed. R. Civ. P. 37(e)(2). Req. for Sanctions at 2. The Lipoid Group argues that Matthias has not shown by clear and convincing evidence that Dr. Rebmann acted with the intent to deprive. See generally Reply. Conversely, Matthias countered during the hearing on October 27, 2023, that the intent to deprive is clear based on the lack of preservation efforts and the record before the Court.

The intent to deprive can be inferred where a party has significantly failed in its obligations to preserve and collect relevant documents. Europe v. Equinox Holdings, Inc., 592 F. Supp. 3d 167, 175 (S.D.N.Y. 2022). It can also be inferred where a significant loss of data cannot be "credibly explained other than by bad faith." Id. (internal quotation marks and citation omitted). This intent requirement must go beyond the intent to destroy electronically stored information, and show the intent to deprive another party of evidence. Id. (citing Leidig v. Buzzfeed Inc., 2017 WL 6512353, at *11 (S.D.N.Y. Dec. 19, 2017)).

In Moody v. CSX Transportation, Inc., a district court found the intent to deprive warranting an adverse inference where "[a party's] failure to make any effort over the course of four years to confirm that the data was properly preserved . . . undercut[] the reasonableness and credibility of their asserted belief that the material was still accessible." Moody v. CSX Transportation, Inc., 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017). Similarly, here, while the Lipoid Group argues that Dr. Rebmann knew of his duty to preserve and tried to comply with his obligations to preserve, OTSC Resp. at 10-11, that argument is belied by the fact that when Dr. Rebmann's laptop went missing, he notified no one. There were many inflection points in this case where Dr. Rebmann could have (and should have) notified his

11

counsel and Matthias's counsel about the missing laptop containing relevant emails. In 2016 when the laptop went missing, in 2017 when the discovery stay was lifted, or even earlier in 2023 when this Court ordered emails be produced.

The actions of Dr. Rebmann are those of a party with the conscious intent to shield information from another party. In Moody, the court noted that even excusing the initial failure to preserve as an error, the "repeated failure over a period of years to confirm that the data ha[d] been properly preserved despite its ongoing and affirmative Rule 11 and Rule 26 obligations . . . [was] so ***stunningly derelict as to evince intentionality***." Moody at 432 (emphasis added). Applying this logic to the instant action, this Court is particularly troubled that there was no mention of a "lost" laptop until this Court ordered an affidavit be produced regarding the tax related emails.

The only evidence that the laptop was indeed lost are affidavits from Dr. Rebmann and his wife Birgit Rebmann. Dr. Rebmann Decl.; B. Rebmann Decl. At the outset, this Court is skeptical of the assertion that Dr. Rebmann lost and/or damaged three laptops beyond recovery over the years. This is improbable and the affidavits provided are shockingly vague about what actually happened. Rather than providing any details or factual support, the Court is expected to simply rely on Dr. Rebmann's assertion that "[i]n 2016, [he] lost the laptop [he] was using." Dr. Rebmann Decl. at 3. The affidavits do not address what happened to his subsequent laptops other than to say that in 2019, "the hard drive in [Dr. Rebmann's] replacement laptop was damaged." Dr. Rebmann Decl. at 3. The Court expects that losing or damaging a laptop where business communications were primarily stored would be a significant event for Dr. Rebmann, prompting more information and recall

12

than what was provided to the Court. Additionally, it strains reason that Dr. Rebmann knew of the importance of preservation in this action yet did nothing to notify his counsel or the Court when relevant communications stored on his laptop were lost in 2016.

Further, the Court notes that Dr. Rebmann has recently undergone a competency examination in this action, Dkt. No. 404. In addition to this Court's concerns about the veracity of Dr. Rebmann's declaration generally, this adds an additional specter of doubt. While Dr. Rebmann's declaration attests that he "could and would testify competently to the matters set forth [therein,]" this is belied by the challenge to whether he is competent to testify at all in this matter. The Court is similarly not at all moved by the declaration of Birgit Rebmann which states she has "personal knowledge" of the methods in which the Subject Email Account emails were stored. B. Rebmann Decl.

Based on the record before the Court, including the suspicious timing of the revelation of the "lost" laptops, Dr. Rebmann's prior testimony admitting he had relevant information stored on his computer, Dr. Rebmann's failure to take any active steps to preserve emails, and Dr. Rebmann's failure to disclose the missing laptop to counsel or to the Court, this Court is persuaded by clear and convincing evidence that Dr. Rebmann acted with the intent to deprive Matthias of material relevant to litigation. A common sense reading of the timeline of this litigation supports as much. Therefore, an adverse inference is appropriate.[3]

---

[3] Considering the gravity of the spoliation in this action, this may have been the extremely rare situation where case terminating sanctions pursuant to Fed. R. Civ. P. 37(e)(2)(C) would have been appropriate. However, because none were sought by Matthias, see Req. for Sanctions, the Court need not address that here.

13

Matthias does not include in his papers whether he seeks a permissive or a mandatory adverse inference pursuant to Fed. R. Civ. P. 37(e)(2)(B). See Req. for Sanctions. Given the gravity of the spoliation violation, this Court believes a mandatory adverse inference is warranted. A mandatory adverse inference is the only sanction that can appropriately address the evidentiary gap caused by Dr. Rebmann's missing electronic communications. The precise form of the instruction will be decided by District Judge Broderick at the time of trial.

### B. Costs and Fees

As Matthias's Req. for Sanctions pursuant to Fed. R. Civ. P. 37(e)(2)(B) was GRANTED, fees are owed. When a Court imposes sanctions under Rule 37, the Court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees . . . unless the failure was substantially justified or other circumstances make an award of the expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Here, as the Court has imposed Rule 37 sanctions and finds no substantial justification, attorney's fees for the motion at issue are warranted. Given counsel's current preoccupation with the impending trial, the assessment of costs and fees any similar applications will be adjourned until after the final determination of this action.

SO ORDERED.

DATED:   New York, New York
         October 31, 2023

_____
JENNIFER E. WILLIS
United States Magistrate Judge